The Massachusetts Mutual Life Insurance Company

*v.*

Maria Boggs.

*Filed at Ottawa May 12, 1887.*

1.  Setting aside trustee's sale—*whether sale made in pursuance of the power—presumption.*  On bill to set aside a trustee's deed made under a power requiring the sale to be made on the premises, on the alleged ground the sale was not made at the time it was advertised nor on the premises, the burden of proof rests upon the complainant, the presumption being that a person charged with a trust performs his duty, until the contrary is made to appear.

2.  Same—*of laches in filing a bill to set aside trustee's deed, and for redemption.*  A trustee's deed of land purported to have been made on the premises on December 12, 1878.  The owner never acquiesced in the sale, but disputed its validity, and refused to surrender possession until dispossessed by legal proceedings, contested for several years, and within a reasonable time after the suit for possession was decided, to-wit, in March, 1884, he filed his bill to set the deed aside, on the ground no sale had in fact been made at the time and place specified in the notice, there being no intervening rights of innocent purchasers:  *Held,* that there was no such *laches* as to prevent the relief sought.

3.  If the power of sale had in fact been executed, but the execution had been merely irregular or defective, and in the meantime the rights of innocent purchasers had intervened, a different question might arise.  But there being no sale, in fact, when the creditor obtained possession under the trustee's deed, he went in as mortgagee, and held as such, and a bill to redeem would lie at any time until barred by the Statute of Limitations.

4.  Usury—*commission paid to loan agents.*  A party desirous of a loan applied to the agents of an insurance company, employed to procure life insurance only, who obtained the loan of the company at the highest legal rate of interest, and exacted of the borrower a commission of two and a half per cent, but the evidence showed that the company loaning had nothing to do with the commissions and derived no benefit therefrom, and never authorized any commission to be charged:  *Held,* that the loan was not usurious by reason of the payment of the commission to the loan agent by the borrower.

Appeal from the Circuit Court of Cook county; the Hon. M. F. Tuley, Judge, presiding.

Mr. HENRY C. NOYES, and Mr. JAMES E. MUNROE, for the appellant:

The trustee's deed could not be vacated, even if there was usury in the loan. *Insurance Co.* v. *Tyler*, 108 Ill. 58; *Lake* v. *Brown*, 116 id. 83.

The burden was upon the appellee to show that no sale was made at the time and place required by the notice and the contract. *Munn* v. *Burgess*, 70 Ill. 604.

When the trustee has not only a power to convey, but the legal title also, and he has conveyed, in the absence of proof to the contrary it will be presumed (when his action is challenged, in equity,) that he has performed his duty. *Burke* v. *Adair*, 23 W. Va. 139.

The recitals in the trustee's deed, of the time, place and manner of making the sale, are *prima facie* evidence of the facts recited. *Miller* v. *Shaw*, 103 Ill. 277; *Breit* v. *Yeaton*, 101 id. 242.

Where, as in the case at bar, the trust deed provides that the recitals in the trustee's deed, thereunder made, concerning notice, and the time, place and manner of the sale, shall be *prima facie* evidence of such facts, such recitals are, until rebutted, sufficient evidence of the facts, and full faith and credit must be attached to them. *Carter* v. *Abshire*, 48 Mo. 300; *Carey* v. *Brown*, 62 Cal. 373.

The sale in question was properly made at the place described by Mr. Rappleye—on the edge of the sidewalk in front of the premises, close to the building on the land. The power authorized the sale to be made "at or on" the premises. "At the premises," means close or near by the premises. It denotes nearness or proximity. *Ray* v. *State*, 60 Ala. 172; *Bartlett* v. *Jenkins*, 22 N. H. 63; *State* v. *Receiver of Taxes*, 9 Vroom, 229.

The *laches* of appellee was such that the relief was barred. *Cox* v. *Montgomery*, 36 Ill. 396; *Williams* v. *Rhodes*, 81 id. 589; *Hamilton* v. *Lubukee*, 51 id. 415; *Bush* v. *Sherman*, 80

id. 160; *Hoyt* v. *Pawtucket Institution*, 110 id. 390; *Cleaver* v. *Green*, 107 id. 67.

Mr. WILLIAM H. SISSON, and Mr. C. F. GOODING, for the appellee:

If no legal sale was ever in fact made, the *laches* of the appellee, even if proven, can not affect her right to relief. *Gibbons* v. *Hoag*, 95 Ill. 69.

An immediate purchaser at a trustee's sale must see that all the precedent conditions of the sale are complied with. *Carsell* v. *Ross*, 33 Ill. 244.

To set aside such a deed, the evidence need not show that no sale at all was made. *McVey* v. *McQuality*, 97 Ill. 93.

The loan being usurious, Mrs. Boggs had the right to an accounting, and to have all payments applied on the principal debt. *Hadden* v. *Ives*, 24 Ill. 381; *Farwell* v. *Meyer*, 35 id. 411; *Taylor* v. *Daniels*, 37 id. 331; *House* v. *Davis*, 60 id. 367.

Mr. ARTHUR W. WINDETT, and Mr. W. T. BURGESS, also for the appellee:

It is the duty of a trustee to adopt all reasonable modes to make the property most beneficial to the debtor, and he can not become the purchaser, either directly or indirectly. *Howard* v. *Ames*, 3 Metc. 308; *Whitcomb* v. *Minchin*, 5 Mad. 91; *Ventris* v. *Cobb*, 105 Ill. 38.

The company is bound to a strict performance of duty by the trustee. *Insurance Co.* v. *Fisher*, 106 Ill. 190; *McVey* v. *McQuality*, 97 id. 93; *Robbins* v. *Butler*, 24 id. 387; *Dennis* v. *McCagg*, 32 id. 444; *Ross* v. *Demos*, 45 id. 447; *Harper* v. *Ely*, 56 id. 193.

In *Burr* v. *Borden*, 61 Ill. the court said: "Powers of this sort are regarded with such jealousy, that sales under them, if attacked in due season, and before the claims of third persons have intervened, will be set aside if not conducted with complete fairness. Such sales will be strictly scrutinized." *Longwith* v. *Butler*, 3 Gilm. 43; *Flint* v. *Lewis*, 61 Ill. 305.

Walker, as the company's agent, conducting the sale by directing and controlling Rappleye's action, could not, for himself or for the company, either in the name of Avery J. Smith, another agent, or in its own name, bid off or become a buyer of the property at that sale. All his action was the company's action. The company was both mortgagee, seller and buyer. Story on Sales, 89 ; *Greenwood* v. *Spring,* 54 Barb. 375 ; *New York Central* v. *Insurance Co.* 4 Kern. 85 ; *Farnsworth* v. *Hemmen,* 1 Allen, 494 ; *Bloy's Trust,* McN. & G. 497.

Mr. JUSTICE CRAIG delivered the opinion of the Court :

This was a bill brought by Maria Boggs, in the circuit court of Cook county, against the Massachusetts Mutual Life Insurance Company and others, to vacate a sale of certain premises in Chicago, under a trust deed executed by the complainant and her husband, to Nicholas B. Rappleye, to secure a loan of $12,000, and interest, which she had obtained from the insurance company, and also to redeem the premises from the deed of trust, and from a subsequent deed of trust executed for a second loan. It was also alleged in the bill that both deeds of trust were usurious. On the hearing, on the pleadings and evidence, the court found that there was no usury in the transaction. The court also found, that on December 12, 1878, a trustee's deed was recorded in the recorder's office in Cook county, of that date, made by Rappleye, as trustee, to Smith, which set out the trust deed securing the $12,000 loan, default in payment of interest notes and of the principal note thereby secured, and in consequence of such default the trustee had made sale of the lands at auction, on the 12th day of December, 1878, at ten o'clock A. M., for $16,300, and thereupon, under the power in the trust deed, conveyed the premises to Smith. The court also found, from the evidence, that no sale of said land was, in fact, made at or on said land by the trustee, on the day mentioned in the notice. The court therefore decreed that the sale be vacated. The

decree found due appellant, on the notes and trust deeds, on January 1, 1887, $26,800.21. The decree thereupon orders, that if appellee shall, within one year from the date thereof, pay appellant said sum of money, with interest at six per cent, then appellant shall surrender the land involved, to appellee, and convey to her, but if she fails so to pay, that her bill shall be dismissed. To reverse the decree, the insurance company appealed, and claims the decree should be reversed on two grounds: First, because the evidence does not sustain the finding that no sale was in fact made on the land, at the time specified in the notice; second, on the ground that complainant was guilty of *laches* in bringing her bill.

The power of sale in the trust deed provided, that at any time after default in payment of any of the notes thereby secured, it should be lawful for the trustee, on application, in writing, of the legal holder of the notes, or any of them, to sell the land at public auction, for cash, after having published a notice of such sale five times in some newspaper published in Chicago, the last publication to be at least ten days before the day of sale, and "said sale to be made at or on the premises." The notice signed by the trustee was dated November 2, 1878, and states that on the 12th day of December, A. D. 1878, at the hour of ten o'clock in the forenoon, at the main door on Polk street, nearest Sherman street, of the building situated on said premises, (describing the premises in question,) in pursuance of the power conferred upon said trustee by said trust deed, said trustee would sell at public auction, to the highest bidder, for cash, the premises by said trust deed conveyed (describing the same.) The deed by the trustee to Smith, the purchaser at the alleged sale, recites that the sale was made on December 12, 1878, at ten o'clock in the forenoon, at and upon the land in question. Rappleye, the trustee, testified, on the hearing, that the sale was made at the time and place designated in the trustee's deed. The deed of trust under which the sale was made, provides that the recitals

which may be contained in the trustee's deed, "setting forth the fact of due notice, advertisement and sale, and setting forth any and all such other facts as may be proper to evidence the legality of such sale and conveyance, shall be *prima facie evidence of the existence of such facts.*"

The foregoing is the evidence mainly relied upon by appellant to show that the land was sold at or on the premises at the time specified in the notice, while, on the other hand, Maria Boggs, the complainant, her husband and daughter, who at the time resided upon the premises, all testify positively that they were there at the time the sale was advertised to take place, and no sale was made by the trustee or any one else. James Boggs, the husband, kept a saloon on the premises at the time, and he was on the look-out for the trustee. Maria Boggs, a few days before the time the sale was advertised to take place, had procured a paper containing notice of the sale, and she, too, as she testified, was on the watch for the trustee, from a few minutes past nine o'clock in the forenoon until four o'clock in the afternoon. She says that she went up-stairs, where she could have a full view of any one who might approach the premises, and that the trustee did not appear on the day of sale. It is true that the burden of establishing the fact that the sale was not made at the time and place alleged, devolved upon the complainant; and we are willing to concede, as held in *Munn* v. *Burgess*, 70 Ill. 604, that the presumption is, that persons charged with a trust perform their duty, until the contrary appears. But here the evidence introduced on behalf of complainant was, in our judgment, ample to remove all presumptions in favor of the acts of the trustee, and, in addition, was sufficient to overcome the evidence introduced by appellant to establish the sale. The trustee testified that the sale was made; that Walker was present and bid off the property for Smith, to whom he conveyed. But Walker is dead, and his evidence is not in the record. The fact in regard to the sale at the time and place,

aside from the presumptions arising from the trustee's deed, and recitals therein, depend entirely upon the evidence of the trustee, and he is contradicted by three witnesses, who had equal means of knowledge with him. The circuit court, on the hearing, thought the weight of the evidence was against the sale, and we are not prepared to say that the judgment was erroneous.

We now come to the second question relied upon by appellant,—the *laches* of the complainant. As heretofore stated, the pretended sale was made December 12, 1878, and the complainant filed her bill in March, 1884. It does not appear that the rights of innocent purchasers are involved, as the insurance company still holds the title, whatever it may be, which passed under the alleged sale of the trustee. Nor does it appear that complainant ever acquiesced in the sale or recognized the title obtained under it. On the other hand, she refused to surrender the possession of the premises, and resisted the action of the insurance company for possession, in the circuit and Appellate courts, until finally defeated, and after possession of the property was finally taken from her, then, without unnecessary delay, this bill was brought. Under such circumstances, we are aware of no rule of equity under which complainant could be barred of relief. If this had been an irregular or defective execution of a power, and, in the meantime, the rights of innocent purchasers had intervened, a different question might arise. But such is not the case. There was no sale whatever under the power contained in the deed of trust, and when the insurance company obtained possession of the premises, they went in as mortgagees, and held as such, and a bill to redeem might be brought at any time before the Statute of Limitations had run.

Appellee has assigned cross-errors on the record, under which she claims that the court erred in holding that the loans were not usurious, and the court also erred in refusing to decree a sale of the premises for the amount due on the

mortgages, with redemption. The two loans appellee obtained from the insurance company drew interest at the rate of ten per cent, payable semi-annually,—the highest rate allowed by the statute at the time the money was loaned. The application for the loans was made by the complainant to Frisby & Rappleye, a firm in Chicago, engaged in the business of life insurance, loaning money upon real estate, and buying and selling commercial paper. The application was submitted to the Massachusetts Mutual Life Insurance Company by this Chicago firm, and the money obtained. Frisby & Rappleye charged complainant a commission of two and one-half per cent, which was paid them for procuring the loan. Had this commission been paid to the insurance company, the rate would then have been twelve and one-half per cent, and the contract would then have been usurious. But the evidence shows that the company never received the commission, never authorized commissions to be charged, and had no knowledge that commissions were charged, and received no benefit, directly or indirectly, therefrom. Under such circumstances, we perceive no ground upon which it can be held that the transaction between complainant and the insurance company was usurious. The insurance company made the loans at ten per cent interest, which it had a right to do under the law, and if the borrower saw proper to pay a bonus to some outside party to aid in procuring the money, that is a transaction which does not, in any manner, have any bearing on the contract under which the insurance company loaned the money to complainant.

But we have been furnished with a long argument, in which it is claimed that Frisby & Rappleye were the agents of the insurance company, and a payment of commissions to them, as agents, was a payment to the company. It may be true, that if Frisby & Rappleye had been the agents of the insurance company in making the loans and receiving the commissions, it might be held responsible for the act of such

agents in receiving the commissions.    But the evidence fails
to show that Frisby & Rappleye were the agents of the insur-
ance company.    They were the agents of the company for
procuring life insurance, and nothing more.

Rappleye, in answer to a question "whether the insurance
company did make a loan or loans of money to Maria Boggs,
through you, as its agents," said: "No, sir.  In explanation of
that answer, I will say that the loans which we made for the
Massachusetts Mutual Life Insurance Company were made
on the same basis that we loaned for everybody else.    When
we had an application for a loan, we would apply wherever
we thought we could best get the money.    Sometimes we
would apply to the Massachusetts Mutual, and sometimes to
other parties.    We had no relations to the Massachusetts
Mutual Company as loaning agents.    Our relations and our
contract called for an agency for procuring life insurance,
but when we procured loans from them of money, we procured
them just the same as we did from anybody else.    We had a
written contract with the Massachusetts Mutual Life Insur-
ance Company, and that contemplated nothing but insurance."
It is true, this firm sent the insurance company quite a num-
ber of applications, and the company made loans thereon; but
there is no evidence in the record which can be construed as
proving that Frisby & Rappleye were the agents of the insur-
ance company in making loans of money.    The facts here
are substantially the same as in *Cox* v. *Massachusetts Mutual
Ins. Co.* 113 Ill. 382, where we held that the loan was not
usurious, and the ruling there must govern here.

As to the other question presented by the cross-errors, that
is disposed of adversely to appellee in *Decker* v. *Patten*, 120
Ill. 464, and we refer to the opinion in that case for an expres-
sion of our views on the question.

The decree of the circuit court will be affirmed.

*Decree affirmed.*