HARRY M. TOOTLE AND WILLIAM GRAHAM, Receivers of
   Phœnix Loan Association, Appellants, v. LEWIS A.
   SINGER AND NELLIE F. SINGER.

Building and Loan Association:   PURPOSE OF:   PAID UP STOCK.
1   The issuance of paid up stock by an association legitimately
    organized for building and loan purposes will not deprive it
    of the protection of the law governing building and loan asso-
    ciations.   The purpose of such organizations is a question of
    fact.

Same:   FOREIGN:  BUSINESS IN IOWA.   A foreign building and loan
2   association may do business in this state unless forbidden by
    statute, law, or public policy.

Same:   USURY:  PARTICIPATION IN BY BORROWER.   A borrower from
3   a building and loan association who, on a settlement, partici-
    pates in usurious earnings cannot afterward complain of the
    usury.

Same:   COMPETITIVE BIDDING:   USURY.   Code, section 1898; removes
4   the necessity for competitive bidding for loans, and is made
    retroactive by chapter 48, Acts 27th General Assembly, and by
    Code section 1919, loans usurious for want of bidders made
    prior to its enactment are purged of usury.   These sections
    apply to foreign as well as domestic associations.

*Appeal from Taylor District Court.*—HON. W. H. TEDFORD,
                        Judge.

THURSDAY, DECEMBER 18, 1902.

THE plaintiffs are receivers of an association organized
in Missouri under the provisions of an act authorizing
building and loan associations.   The articles of incorpora-
tion of the association state that it is organized for the
purpose of forming a "mutual loan and building associa-
tion," the objects of which "are the accumulation of funds
to loan to the members thereof or others; to purchase,
buy, sell, convey, lease or mortgage real estate; and to
erect buildings on its real estate, for rent or otherwise."

The by-laws of the association provide for the issue of paid-up stock in different forms and under different conditions, but, in all cases where strictly paid-up stock is provided for, it is also provided that, where it becomes due or is withdrawn, the withdrawal value shall be the amount actually paid therefor, and nothing more, and that such stock may draw interest at a rate not to exceed eight per cent., and also that such stock shall not participate or share in the profits of the association. In 1892 the defendants became members of the association and owners of a portion of its capital stock. They also borrowed $2,000 of the association, and executed a note therefor in the sum of $3,400, payable at the rate of $34 per month, for 100 months. It is stipulated in the note that $10 of each monthly payment is for dues on the capital stock owned by the defendants and pledged for the payment of the loan, $10 is to cover the monthly interest on the loan, and $14 is to cover the monthly premium due on the sum borrowed. Monthly payments were made by the defendants on this note, and in addition thereto a sum which, with the monthly payments, aggregated the sum of $1,926.93, in June, 1895. In February, 1896, there was found due the association from the defendants on said loan the sum of $970.20, which it was agreed should be paid off by a new loan from the association. Thereupon the defendants made written application to the association for installment stock to the amount of $1,470, and at the same time applied in writing for a loan of $988.24, and made a written bid of $34 per hundred premium for the same. The application and bid were accepted, and a new note executed for the sum of $1,420, payable upon maturity of the stock issued to the defendants under this new arrangement, with six per cent. interest, payable monthly, and monthly dues of $7.50 upon the stock. This is an action in equity to recover the amount due by the terms of this note, and to foreclose the mortgage given to secure the same. There

was a judgment for the plaintiffs for $111.72, and the entire transaction between the association and the defendants was found usurious. The plaintiffs appeal.—*Reversed.*

*Flick & Jackson* for appellants.

*Haddock & Sons* for appellees.

SHERWIN, J.—The appellees contend that the Phœnix Loan Association was not a building and loan association, and that the loan of 1892, and its renewal in 1896, are for this reason usurious. This contention is based upon the provisions of its by-laws authorizing the issue of paid-up stock. The law, of Missouri authorizes this, as we understand it, and since the enactment of the Code, of 1897 it has been expressly authorized in this state, and prior to that time there was no prohibition of such stock. In fact it is a general rule, recognized by all the courts, that in all building and loan associations there are members and stockholders who are nonborrowers, and hence the mere fact that the laws governing the association permit the issue of paid-up stock within certain limits should not be construed by the courts as placing it beyond the pale of strictly building and loan associations, even where the statutory law does not authorize it. It is often of great benefit to the borrowing members to have fellow members who are investors instead of borrowers, and, unless it clearly appears from the transactions of the association that its incorporation under the building and loan law is simply to afford a convenient disguise for evading the usary laws, it should not be held without the protection of such laws. Endlich, Building Associations (2d Ed.) section 17; 4 Am. & Eng. Enc. Law (2d Ed.) 1002. It seems to us that the question of whether an association is organized for legitimate building and loan purposes is one of fact, to be determined from the evidence in the case. *Parker v. Association*, 46 Ga. 166; *Shannon v. Dunn*, 43 N. H. 194·

*1. BUILDING and Loan associations: purpose of: paid up stock.*

In the case at bar the paid-up stockholders were none the less members of the association, with no greater rights or privileges than the other members, and, under the by-laws prohibiting them from participating in the profits of the association beyond the receipt of eight per cent. interest, there is absolutely nothing in the record tending to indicate that it was a money-loaning scheme in the interest of investors, for the purpose of evading the usury laws. We think the association was a building and loan association, within the meaning of both the law of Missouri and of Iowa.

But, even if found to be a foreign association of the kind in question, it is urged that it had no authority to do business in this state as such an association. We know of no law forbidding a foreign building and loan association doing business in this state, providing it is done in compliance with our statutory requirements, and it is not in itself unlawful. The contracts of such associations have been repeatedly enforced by this court, recognizing the general comity existing between states, and it is held as a general rule that "corporations of one state may exercise any or all of their powers in another state, unless the latter state, by its statutes, decisions. or policy, forbi 's." Cook, Stock, Stockh. & Corp. Law, 694; *Bank v. Earle*, 13 Pet. 519-521 (10 L. Ed. 274); *Christian Union v. Yount*, 101 U. S. 352 (25 L. Ed. 888).

2. SAME: foreign: business in this state.

Neither in 1892 nor in 1896 was there any law in this state requiring foreign building and loan associations to procure any other or different permit for doing business in this state than was required of corporations generally; and on the 16th day of June, 1891, a permit was issued to the Phœnix Loan Association by the then auditor of state, under section 1, chapter 76, Laws 21st General Assembly, authorizing it to transact its business in this state. The act just referred to was an indirect invitation to foreign

corporations of all kinds to engage in business in Iowa, and in the absence of any statute directly forbidding building and loan associations entering the state, it must be held that they had the right so to do, upon complying with the law relating to foreign corporations generally.

With the propositions settled as to the character of the association and as to its right to transact business in this state, we reach the question of usury in one or both 3. USURY: participation in by borrower. of the loans. The uncontradicted evidence is that there was no premium actually bid at the time of the first loan. This being true, it is clear that there was usury in the transaction. It is claimed, however, on the part of appellant, that when the new loan was made the stock originally issued to the defendants was surrendered, and credit then given for its value, including profits earned, and that the appellees participated in the usurious earnings of the association, if there were any, and cannot now be heard to complain thereof. There is evidence tending to support this claim, as there had been but about $2,000 paid at the time of the renewal, and the actual amount then found due, after computation and surrender of the old stock, was $970.20, and we think, under the circumstances, that the defendants should be bound by the settlement then made. *Barrow v. Association* (Tenn. Ch. App.) 48 S. W. Rep. 736; *Milnor v. Association* (Tenn. Ch. App.) 84 S. W. Rep. 732. See, also, *Association v. Peed* (Ind. Sup.) 52 N. E. Rep. 201.

We are also well satisfied that there was no genuine bid at the time of the second loan or renewal. The pretended bid was in writing, and in the hands of the secre- 4. COMPETITIVE bidding: usury. tary of the association, with a large number of other written bids. There were no applicants for loans present at the meeting of the board of directors at which these loans were placed, and the secretary seems to have bid against himself as the representative of all applicants for loans. Such bidding has been

held a farce. *Moore v. Association,* 74 Mo. App. 468; *State v. Phœnix Loan Ass'n* (Mo. App.; unreported, but copy of opinion attached to appellees' brief). But section 1898 of the Code of 1897 removed the necessity for competitive bidding. And chapter 48, Acts 27th General Assembly, made said section 1898 retroactive. *Association v. Heidt,* 107 Iowa, 297.

Should section 1898, as amended by the 27th General Assembly, as above stated, be applied to foreign building and loan associations? Let us look at the language of this section. It says: "All building and loan or savings and loan associations upon receiving the certificate from the auditor shall have power," etc. Section 19 of the same act (section 1908, Code 1897) points out what foreign building and loan associations shall do to entitle them to transact business in this state, and then provides that, upon compliance with the statute, the auditor shall issue a like certificate, as in the case of domestic associations. The legislature, in enacting this law, clearly sought to put foreign associations on an equality with domestic ones, upon condition only that they comply with the requirements peculiar to them. It is manifest, then, that section 1898, Code 1897, was intended to apply to foreign as well as domestic associations; for it was a matter known to every member of the legislature that foreign associations had been doing business in this state for years. It was known that the trouble arising over the question of usury in contracts of this kind was not alone confined to domestic corporations, and the law in question was to remedy this very trouble, and, if it had been the legislative intent to apply it only to domestic associations, it would have been so declared. This statute is as broad as it could well have been, there is no limitation except as to certificates, and we think the intent clear to apply it to foreign, as well as domestic, associations.

That this interpretation of the law is correct is further sustained by section 32 of the building and loan law (section 1919, Code 1897), which provides that "all such associations having heretofore transacted business in this state, which shall not have complied with the provisions of this chapter, shall have the right to close up their business and fulfill their contracts heretofore entered into with the residents of this state, without being subject to the penalties prescribed in this chapter." From the foregoing it follows that the transactions in question were purged of the usury inhering in them originally, and we come to the question of the amount due the plaintiffs on the note and mortgage in suit.

The original loan was adjusted by the parties themselves in 1896, while the association was a going concern, and the note and mortgage in suit were then executed.

5. COMPUTA-TION of amount due. Whatever of interest in excess of the twelve per cent. provided for by section 1898 of the Code may have actually been paid up to that time, we have no means of knowing certainly, nor is it material; for, as we have heretofore said, when the old stock was surrendered it may be inferred, at least from the evidence, that it was credited with its proportionate share of the earnings of the association, and if we are correct in this we should determine the status of the parties from the conditions existing at the time of the renewal of the loan. At that time there was found to be due the assocation $970.20. Interest should be computed on this sum from the date of the note at the rate of six per cent. per annum, the rate provided for therein, and from the total amount so found there should be deducted the whole amount of interest paid on the new loan, with interest on such monthly payments at the rate of six per cent. per annum, computed as partial payments. As the association is insolvent, this rule applies, and defendants are not entitled to credit for dues paid on stock. *Hale v. Kline*, 113 Iowa,

523; *Spinney v. Miller*, 114 Iowa, 210. The defendants are entitled also to offset the value of their stock, as it shall be determined upon final settlement of the affairs of the association.

The case is reversed and remanded, for a judgment in harmony herewith.—REVERSED.