### Ira M. Cobe, Appellee, v. Edward H. Guyer et al., Appellants.

#### Gen. No. 4,905.

1. EQUITY PRACTICE—*effect of answer after demurrer overruled.* By answering over after demurrer a party waives the right to assign error on the ruling of the court on his demurrer, but it does not waive a defense which he may make and does make by his answer and which requires no demurrer.

2. SUPERIOR COURT OF COOK COUNTY—*jurisdiction of.* The Superior Court of Cook County is a court of general jurisdiction, has concurrent jurisdiction with the Circuit Court of Cook County and has jurisdiction of the subject-matter of appointing receivers for homestead and loan associations.

3. JURISDICTION—*presumptions which aid.* In a collateral proceeding it is a rule of uniform application that in relation to courts of general jurisdiction nothing is to be presumed to be out of their jurisdiction but that which specially appears to be so.

4. HOMESTEAD LOAN ASSOCIATIONS—*what does not establish usury.* A bonus or bribe, no part of which goes to an association, from which the association has received no benefit, and of which the association has no knowledge, will not render a loan usurious.

5. HOMESTEAD LOAN ASSOCIATIONS—*statute with respect to priority of loans construed.* The statute with respect to priority of loans is self-enforcing and requires no by-laws to aid it, when the

Cobe v. Guyer.

by-laws fix the rate of interest and premium and thus in effect pro-
vide that all loans shall be on the level premium plan.

Foreclosure. Appeal from the Circuit Court of Rock Island
County; the Hon. EMERY C. GRAVES, Judge, presiding. Heard in
this court at the October term, 1907. Affirmed. Opinion filed March
11, 1908.

**Statement by the Court.** On August 15, 1896, Ed-
ward H. Guyer, Charles H. Pope, Charles E. White and
George W. Walker were the owners of one hundred shares
of the capital stock of the Masonic Mutual Savings and Loan
Association, a corporation chartered on the 21st day of
April, 1891, under the homestead and loan association laws
of Illinois under the name of the First National Masonic
Mutual Savings Association, the name of which was subse-
quently changed to the Masonic Mutual Savings and Loan
Association. On that date they applied for and obtained
from the association a loan of $10,000 and executed a bond
to the association for said sum, signed by each of them,
binding themselves jointly and severally to pay said sum to
said association, its successors and assigns, as follows: from
and after the date of said bond $50 dues on said stock,
$50 as interest on said loan and $50 as premium on said
loan, all and each on or before the first day of each and
every month in advance, until said stock shall mature and
said bond shall be paid in accordance with the charter and
by-laws of said association. On the same day Edward H.
Guyer and Constance K. Guyer executed a mortgage to said
association on certain real estate in the county of Rock
Island securing said bond. The borrowers wrote a letter to
the association on August 22, 1896, directing it how to pay
over the money loaned, and the money appears to have been
paid as directed. Default was made in keeping up the
monthly payments, and in August, 1898, the amount delin-
quent amounted to $2,600. On August 30, 1898, the four
makers of the original loan subscribed for twenty-six ad-
ditional shares of stock in the association, and obtained an
additional loan of $2,600 on this stock, secured by an ad-
ditional bond and mortgage, and applied this loan in pay-

ment of the delinquent installments due under the former mortgage.

On July 1, 1899, the borrowers being in default on both mortgages and the association threatening to bring suit to foreclose them, an accounting with the association was had in which it was found that the amount owing on both mortgages was $13,379.60. This amount was at that time paid by crediting the withdrawal value of the 126 shares of stock $1,328 and by Guyer, Pope and White obtaining a new loan, evidenced by five notes signed by them for $12,000, four of said notes being for $300 each, due in one, two, three and four years, and one for $10,800 due in five years, all bearing interest at the rate of 7 per cent per annum payable on the first day of each and every month. The said five notes were secured by the mortgage executed by Edward H. Guyer and Constance K. Guyer involved in this case; this mortgage was on property that was included in the original mortgage. The balance of the $13,-379.60 was paid by the association accepting the unsecured note of Guyer, Pope, and White for $51.60 due in sixty days. The association at that time cancelled and discharged the two bonds executed by Guyer, Pope, White and Walker and the mortgages securing them.

On January 29, 1901, in a suit brought in the Superior Court of Cook county, entitled Carry et al. v. Masonic Mutual Savings and Loan Association et al., a decree was entered declaring the association insolvent and appointing a receiver, and on February 16, 1901, an additional decree was entered accepting the resignation of the receiver first appointed and appointing the Equitable Trust Company. On April 6, 1901, the association by its deed conveyed to the Equitable Trust Company as receiver all its property, real and personal, including all notes, bonds and mortgages relating to the business of the association. This deed was executed by the association by its president and secretary under the seal of the corporation, and was duly acknowledged. The making of this deed was by the direction of four of the five directors of the association, as appears from a

memorandum on the deed signed by them. On November 21, 1902, the Superior Court of Cook county entered an order of record in the case in which the receiver was appointed, authorizing the receiver to sell all the assets of the association to Cobe, the appellee, for $33,000. In pursuance of this order the Equitable Trust Company executed a deed assigning the note and mortgage in controversy with other assets to appellee, and on January 22, 1903, the Superior Court of Cook county entered an order approving the report filed on that day, reciting the transfer and conveyance of all its assets to Cobe. During the pendency of the receivership Guyer, Pope and White applied to and obtained from the receiver a large number of partial releases, releasing portions of the premises included in the mortgage, and subsequent to the sale and conveyance of the mortgage to Cobe they obtained from him similar partial releases. On September 9, 1904, Cobe filed a bill to foreclose the notes dated July 1, 1899, remaining unpaid and the mortgage securing them. The defendants demurred to the bill, and thereupon an amended and supplemental bill was filed. The defendants again demurred, the demurrer was overruled and the defendants answered over. The answers state that appellants and Walker in August, 1896, were in debt in the sum of $4,426.53 and that appellants applied to the association for a loan to pay these debts and that the association loaned them $8,925.04 and demanded as a condition precedent that appellants and Walker subscribe for one hundred shares of stock and make a bond reciting the loan of $10,-000; that the difference between the $8,925.04 loaned and the $10,000 mentioned in the bond was made up of the following items: membership fee $100; six months dues $300; attorney's fees $35; interest on loan to September 1, 1896, $139.96, and $500 commissions, a total of $1,074.96, which was a bonus to the association and was usury; that the loan was not bid for in open meeting of the shareholders as required by statute, but said interest and premium were arbitrarily fixed by the association for the purpose of corruptly exacting usury; that there was no by-law of the as-

sociation dispensing with offering money to loan in open meeting, the preference to be decided by priority of application; that on August 30, 1898, after the making of said loan the association claimed appellants and Walker were in default in the sum of $2,600 and threatened to foreclose, and proposed that appellants and Walker should subscribe for twenty-six additional shares of stock, and make a bond and mortgage for $2,600 and appellants to prevent loss and to obtain time complied therewith; that on July 1, 1899, the association claimed a default on both bonds and threatened to foreclose, and that appellants made the notes and mortgage under threats and duress, but they deny that it was agreed that $12,000 was then due. The answers further deny the jurisdiction of the Superior Court of Cook county in the proceedings in which the receiver was appointed, and say that the same are null and void, and deny the title of appellee to the notes and mortgage, and deny that appellants ever asked for or obtained any release from appellee or paid any money to him, and deny that anything remains due on said notes and mortgage. The appellants filed a cross-bill, setting up the giving of the notes and mortgage as is set forth in the answers alleging usury and payment of the principal sum loaned, and praying a surrender and cancellation of the notes and mortgage. Appellee answered the cross-bill denying its allegations. Replications were filed and a reference to the master was made on both bills, to take the evidence and report the same with his conclusions. The master reported that Guyer, Pope and White were indebted to appellee in the sum of $5,657.55 with interest on $4,676.83 from January 23, 1907. The objections heard before the master were permitted to stand as exceptions in the Circuit Court, and on a hearing the exceptions were overruled and a decree of foreclosure was entered, from which decree this appeal is prosecuted.

J. T. KENWORTHY and S. R. KENWORTHY, for appellants.

S. W. SWABEY, for appellee; W. R. MOORE, of counsel.

MR. JUSTICE THOMPSON delivered the opinion of the court.

The appellants challenge the right of the appellee to bring this suit to foreclose the mortgage on the ground that the appellee is not the owner of the notes and mortgage. It is argued that the Superior Court of Cook county had no jurisdiction in the suit begun in that court to wind up the affairs of the insolvent Masonic Mutual Savings and Loan Association, and that the appointment of a receiver in that court and all acts of such receiver are null and void. The appellants filed a special demurrer to the amended and supplemental bill, the sixth ground of demurrer being: "This bill shows complainant predicates title by virtue of decree of Superior Court appointing a receiver which is a nullity for want of jurisdiction of the subject-matter." Appellants assign for error and insist that the court erred in overruling the demurrer and appellee insists that the appellants having by their demurrer raised the question of law as to the jurisdiction of the Superior Court of Cook county in the suit in which the receiver was appointed should have stood by their demurrer, but having answered over that they have abandoned and waived their right to insist on that defense. Neither contention can be sustained. "By answering over after a demurrer a party waives the right to assign error on the ruling of the court on his demurrer, but it does not waive a defense which he may make, and does make, by his answer and which requires no demurrer." Bauerle v. Long, 165 Ill., 340; Anderson v. Olsen, 188 Ill., 502.

It is insisted by appellants that because section 25 of the homestead and loan act provides that "receivers may be appointed whenever nine or more shareholders of any association shall file a petition in the circuit court of the county in which the principal office of such association is located, setting forth the facts relied upon for the appointment of a receiver. Such petition shall be subscribed and sworn to by such petitioners," etc., therefore the Superior Court of Cook county did not have jurisdiction of the subject-matter of appointing receivers of such associations having their prin-

cipal office in Cook county. The Supreme Court of Illinois, in construing sections 23 and 24 of article VI of the Constitution of 1870, has held that the Superior Court of Cook county has precisely the same jurisdiction as circuit courts, and that the judges of that court are vested with the same powers as judges of the Circuit Court; that when these provisions of this article are considered together, "it is apparent the intention of the framers of the Constitution was, to give the several judges of these respective courts identically the same powers and place them precisely upon the same footing; and that it was not the intention to make these courts otherwise than circuit courts, but composed of branches corresponding with the number of judges, each judge, while holding such branch, having all the powers of a circuit court." "Both courts originated from the same sovereignty, and they have co-ordinate jurisdiction in civil cases in Cook county." Jones v. Albee, 70 Ill., 34; Samuel v. Agnew, 80 Ill., 553; Berkowitz v. Lester, 121 Ill., 99; C. & N. W. Ry. Co. v. C. & E. R. R. Co., 112 Ill., 589; Salomon v. Chicago Title & Trust Co., 115 Ill. App., 194. The Superior Court of Cook county is a court of general jurisdiction and has jurisdiction of the subject-matter of appointing receivers for homestead and loan associations. The proceedings of that court are only relied upon to give the appellee title to the instruments sought to be foreclosed, and those proceedings are only collaterally involved. It is a rule of uniform application that in relation to courts of general jurisdiction nothing is to be presumed to be out of their jurisdiction but that which specially appears to be so. "This rule is limited to collateral proceedings, and where the record of a judgment or decree is relied on collaterally, jurisdiction must be presumed in favor of a court of general jurisdiction, although it be not alleged or fails to appear in the record." Swearengen v. Gulick, 67 Ill., 208; Field v. Peeples, 180 Ill., 376. "This presumption which the law indulges in favor of its jurisdiction can only be overcome in a collateral proceeding where the record itself shows there was no jurisdiction." Osgood v. Blackmore, 59 Ill., 261.

There was introduced in evidence a decree, in the case of Carry and others against the Masonic Mutual Savings and Loan Association and others, entered in the Superior Court of Cook county in January, 1901, which recites that that case came on to be heard upon the bill of complaint as amended, the answers of the defendants and replication thereto, with the evidence heard in open court; the various findings of the court as to the organization of the association; that the nine complainants, naming them, were stockholders in said association; the various proceedings of the association and facts showing insolvency; that equity requires that a receiver should be appointed; that the affairs of the association should be wound up, and decreeing that the association transfer and deliver all its assets to a receiver, and appointing a receiver.   Afterwards a further decree was made authorizing the Equitable Trust Company as receiver to sell all the assets of the association for $33,000. Under this decree the receiver did execute a deed assigning the assets including the notes and mortgage in controversy to appellee, and an order of court was made approving the action of the receiver.   The burden was on the appellants to show a lack of jurisdiction of the Superior Court to make said decrees and orders.   A lack of jurisdiction was not shown, and we conclude that appellee had title to the notes and mortgage sought to be foreclosed.

The record also shows that the Masonic Mutual Savings and Loan Association by its officers and under the seal of the association, by the authority of the board of directors, executed a deed conveying to the Equitable Trust Company all the assets of the association, and that the Equitable Trust Company executed a deed assigning the notes and mortgage in controversy to the appellee.

The remaining questions are, was there usury in the notes and mortgage sought to be foreclosed and has the bond been paid.   It is not claimed that there was any usury in the present notes and mortgage sought to be foreclosed, but it is claimed that the original bonds and mortgages were usurious which the notes and mortgage sought to be fore-

closed were given in payment of; first, because the secretary of the association, and a sub-agent Bowker, were paid $500 out of the original loan as a commission for procuring the loan; second, because the by-laws of the association under which the loan was made provided, "Every loan of this association shall be made upon a non-negotiable note or bond, bearing interest and premium each at the rate of 6 per cent per annum and secured by first mortgage on real estate, which security shall be satisfactory to the board and shall be accompanied by a transfer and pledge of the shares of the borrower to the association," the association having no by-law providing that the preference or priority of the loans shall be decided by the priority of the application for loans by its shareholders. D. D. Hunt, who was president of the association when the original loan was made, testified that the priority of awarding loans was determined by the date of filing of the application of borrowers. At the time the original loan was made the appellants, Edward H. Guyer, Charles H. Pope, and Charles E. White, with George W. Walker, were partners in a land and town lot company under the name of the East Moline Company. The correspondence shows that the loan association was directed to issue checks on account of the loan for the following items:

| To | Henry Curtis | $1,200.00 |
| " | H. C. Connelly | 702.91 |
| " | H. L. Velie | 293.85 |
| " | C. H. Deere | 265.44 |
| " | W. J. Entriken | 200.00 |
| " | Oloff Atkinson | 2,273.33 |
| " | Pope | 1,000.00 |
| | | $5,926.53 |

The remainder was directed to be paid to E. H. Pope under instructions contained in a letter signed by the four borrowers. On August 28, 1896, C. H. Pope wrote a let-

ter acknowledging the receipt of $4,598.51 "being the balance in full of proceeds of $10,000 loan." The answer sets up that the association retained out of the loan $100 membership fee; six months dues $300; $35 attorney's fees; interest on the loan to September 1, 1896, $139.96, and $500 commissions. If checks were drawn as directed and a check given for the receipt of $4,598.31 then the association paid $525.04 more than the amount loaned. If the $1,000 check directed to be drawn by Pope was not drawn and the others were, including one for the sum of $4,598.51, and the items set up in the answer as having been retained were properly retained, still the company would have paid more than the amount of the loan. The evidence does not show that the association received any part of the $500 claimed to have been paid as a commission for procuring the loan. It does tend to show that Pope, who is the assistant treasurer of Deere & Co. of Moline, and Guyer, who is an attorney and secretary and manager of a Rock Island Loan Association, agreed to pay Hull, who was secretary of the Masonic Mutual Savings and Loan Association and a sub-agent named Bowker, $500, to influence them to make the loan. The proof is mostly confined to what was to be done, except that Guyer and Pope testified that the only money received from the original loan was $8,925.14, but do not give the items that make up that sum. Guyer testified that a bonus of $1,074.96 was kept out, and that sum was made up of $500 for commissions and $574.96 for interest, membership fees, dues and attorney's fees. The evidence is so contradictory that it is not possible for us to determine with any certainty what are the facts as to how much money was advanced on the loan. It is insisted that the sum of $500 claimed to have been paid to Hull and Bowker as commissions, makes the contracts usurious. The association received no part or benefit from such payment and knew nothing of it being made. It was paid apparently as a bribe to procure something that the parties making the payment otherwise would not have received, and naturally would be concealed from the directors of the association. In Chicago Fire Proof Co.

v. Park Nat. Bank, 145 Ill., 481, it was held that the fact
that a president of a bank entered into an agreement in his
individual capacity by which he secured a commission above
the legal rate of interest, on a loan by his bank, where the
bank has nothing to do with the agreement and receives no
part of the money paid by the borrower as commission, did
not establish usury on the part of the bank. In Cox v.
Massachusetts Mutual Life Ins. Co., 113 Ill., 382, it was
held that the fact that an agent, without the authority, con-
sent or knowledge of his principal, upon loaning the money
of the latter exacts from the borrower a sum in excess of
lawful interest does not make the loan usurious. The same
rule is held in Massachusetts M. L. Ins. Co. v. Boggs, 121
Ill., 119; Boylston v. Bain, 90 Ill., 283; Gantzer v.
Schmeltz, 206 Ill., 560; Goodwin v. Bishop, 145 Ill., 421;
Ballinger v. Bourland, 87 Ill., 513; Phillips v. Roberts,
90 Ill., 492. See also 29 Am. & Eng. Encyc. of Law (2d
ed.), 502.

On August 19, 1891, section 1 of article VI of the by-laws
was amended by the stockholders, making it read:  *"Every
loan* of this association shall be made upon a non-negotiable
note or bond, *bearing interest and premium each at the rate
of six per cent* per annum and secured by first mortgage on
real estate, which security shall be satisfactory to the board
and shall be accompanied by a transfer and pledge of the
shares of the borrower to the association. The shares so
pledged shall be held by the association as collateral security
for the performance of the conditions of said note or bond
and mortgage  *  *  *  and provided further that all
premiums shall be paid in equal monthly installments on or
before the 20th day of each and every month during the
continuance of the loan." It is insisted by appellants that in
Borrowers, etc., Assn. v. Eklund, 190 Ill., 257, the Supreme
Court announced the law to be that, where the by-laws do not
provide that the preference or priority of loans shall be
determined by the priority of the application of shareholders
for loans, the only way loans could be made drawing more
than the lawful rate of interest was by competitive bidding

in open meeting of the association. A careful reading of the Eklund case does not lay down the rule contended for. The proviso in the statute regarding the level premium plan of loans by such associations is: "Provided, That any such association may, by its by-laws, dispense with the offering of its money at a rate of interest and premium fixed by its by-laws, and either with or without premium, deciding the preference or priority of loans by the priority of the applications for loans of its shareholders." (First proviso of section 85, chapter 32, Hurd's Stat., 1905.) The by-law is that "every loan of this association shall be made" in accordance with its terms, so that it dispensed with all offering its money for bids as completely and clearly as if those words were in the by-laws, and it makes *every* loan "bearing interest and premium each at the rate of 6 per cent per annum." The statute law enacts that in all such cases the priority or right of loan shall be decided by priority of application for loans. It is argued by counsel that without that kind of a provision in the by-laws, it was in the power of the directors arbitrarily to make the loans to such parties as suited them without any regard to priority of application. The provision of the statute law of the State is clear that on the level premium plan the priority of loans shall be decided by priority of application. If the statute would not control and govern a board of directors when its provisions are as clear as are the provisions of this statute in that regard, then no law or by-law would control them. If the board of directors and officers would disregard a statute as plain in its mandate as this one is, a by-law would not add anything to the statute that would make it more binding. We hold that that part of the statute in reference to priority of loans is self-enforcing and requires no by-laws to aid it, when the by-laws fix the rate of interest and premium and thus in effect provide that all loans shall be on the level premium plan. Proof was made by the officers of the association that, from the time this by-law was passed to the time the receiver was appointed, all applications for loans were numbered and "priority in awarding loans was determined by the date of filing the ap-

plication of the borrower; first come first served." The by-law fixed the interest and premium, and the statute fixed the priority of right to a loan, so that all shareholders were upon an equality. The by-law and the statute were followed. The loan was not usurious because there was no by-law re-enacting that part of the statute as to the right of priority.

It is insisted by appellant that under the rule laid down in Ryan v. Newcomb, 125 Ill., 91; Puterbaugh v. Farrell, 73 Ill., 213, and Tottle v. Singer, 118 Iowa, 533, the purchase of the interest of Walker by the other three partners, and the participation by them in the claimed usurious profits and earnings of the stock on which the original loan was made in the settlement of the old bonds, and the making of new notes signed by the remaining three partners in such a settlement of the transaction, was such a settlement of the original indebtedness that appellants cannot now set up usury against the new loan, if there was any in the former transaction. Entertaining the views we have expressed, that there was no usury in the original loan, it is unnecessary for us to pass upon this contention. Appellee being the owner of the notes and mortgage, and the same being free from usury the decree is affirmed.

*Affirmed.*