## WILSON v. MARTINEZ.

## MARTINEZ v. WILSON.

### (Circuit Court of Appeals, Fifth Circuit.   May 7, 1901.)

#### No. 1,002.

BUILDING AND LOAN ASSOCIATIONS — RIGHTS OF BORROWING STOCKHOLDERS — CONSTRUCTION OF CONTRACT.

Petitioner became a stockholder in defendant building and loan company, and by her contract of subscription agreed to pay a fixed sum monthly on each share of stock until the same became matured by reaching its par value, no time for such maturity being fixed by the by-laws.  The by-laws authorized the company to loan its funds to members on such terms and conditions as should be therein prescribed, and provided that such loans should be repaid according to the terms agreed on.  Petitioner borrowed $1,800, the par value of her shares, securing the same by a pledge of her stock, and also by a mortgage conditioned for the payment of $2,356.20, "the same being principal, interest, and premium of a loan from said company.  *  *  *  which said loan is evidenced by 77 promissory notes of even date with this mortgage, each for the sum of $30.60."  One of said notes matured each month, and included, besides interest and premium on the loan, the monthly installment due on petitioner's stock; and on the payment of each note she was credited with such installment on the books of the company.  Held, that such installments constituted the "principal" of the mortgage debt, and on payment of all the notes such debt was extinguished, and that there was nothing in the contract which entitled the company, or its receiver in insolvency, to hold the mortgage as security for the payment of further installments, although the stock had not matured by reaching its par value.

Appeal and Cross Appeal from the Circuit Court of the United States for the Southern District of Alabama.

Jas. W. Gray, for appellant.

R. T. Erwin, for appellee.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge.   On June 16, 1899, Joachim A. Manorita filed his bill of complaint in the United States circuit court for the Southern district of Alabama against the Fidelity Trust & Loan Company, a building and loan association incorporated under the laws of the state of Alabama, and doing business in the city of Mobile, in that state.   The bill averred that the company was insolvent, and prayed for the appointment of a receiver to take charge of its assets, and that at the final hearing the court would distribute the assets equitably among those entitled thereto.   Thereupon the circuit court appointed W. K. P. Wilson (the appellant and cross appellee) receiver of the company, and by decree vested the receiver with authority to exercise the powers of foreclosure and sale vested by any mortgage or other written instrument held by the company.   Under this power the receiver undertook to sell the property of Laura J. Martinez (the appellee and cross appellant) under the power of sale contained in a mortgage made by her on the 6th of February, 1893, to the company, and to that end gave notice by publication, as required by the mortgage.   The appellee

and cross appellant thereupon filed her petition in the cause of Manorita v. Loan Co. on November 28, 1899. The receiver answered this petition, and such proceedings were had that the matter came on for hearing before the circuit court on January 30, 1900, upon an agreed statement of facts and argument by counsel representing the parties in interest, and the court, on April 4th, announced its views in an opinion by Judge Toulmin, reported in 101 Fed. 8, from which we make the following liberal excerpt:

"The petitioner avers that nothing is due on the mortgage mentioned in the petition, and that there is nothing owing on or secured by said mortgage, except the last note mentioned therein, payment of which is offered, and tender thereof made. Petitioner prays that the receiver be restrained from selling the property described in the mortgage, and that he be directed to accept the amount of money tendered, and to surrender said note, and to cancel and surrender said mortgage. The receiver, answering, admits that all the notes mentioned in the mortgage, except the last one, have been paid, and admits the tender alleged, but denies that the mortgage was executed to secure only the notes described therein, and insists that a large sum of money in addition to the last-mentioned note is due on said mortgage, to wit, the sum of $1,200. There is nothing in the answer that shows how said sum is due, and nothing in the mortgage which specifically shows that the money loaned to petitioner was an advance on her stock in the company. There is nothing in the mortgage as to the probable time of the maturity of the stock, or when the shares would reach their par value. There is nothing in the mortgage to indicate that the maturity of the loan depended on the maturity of the stock. The mortgage recites that it 'is intended as security for the payment of the sum of $2,356.20, the same being principal, interest, and premium of a loan from said company, * * * which said loan is evidenced by 77 promissory notes of even date with the mortgage, each for the sum of $30.60.' Among other covenants contained in the mortgage, the mortgagor agrees to keep and perform promises and engagements made and entered into with said company according to the true intent and meaning of its by-laws and articles of association, the effect of which, I presume, is that she will pay all fines, fees, penalties, etc., in accordance with the by-laws of the company. The agreed statement of facts shows that the petitioner was a shareholder in said company. Her certificate of stock and the by-laws of the company are in evidence. They provide that each shareholder shall pay a monthly installment of 35 cents on each share for every month until maturity. The articles of association of the company provide that, when funds are on hand, the company shall lend the same to any shareholder on such security and on such terms and conditions as may be prescribed by the by-laws, and that the loans made are to be paid according to the terms agreed on. The mortgage provides, as I have said, that petitioner would keep and perform the promises and engagements made according to these by-laws and articles of association; also that the property will be kept insured, and the taxes paid, etc. It further provides that, if default shall be made in the payment of any of said notes, or any part thereof, or in case of failure to duly observe and keep the by-laws of the company, or, in case of a breach of any of the covenants and agreements contained therein, the whole of the principal, interest, premium, fines, dues, and costs shall at once become due and payable, at the option of the company; and the right is given the company to sell the real estate conveyed by the mortgage, and out of the proceeds of sale, after paying certain expenses, to reserve enough to pay all principal, interest, premium, dues, fines, taxes, insurance, or other evidences thereby secured to be paid. It is further provided that, if the mortgagor fails to effect insurance on the property, or to pay the taxes on it, as she covenants and agrees to do, and the company effects such insurance, and pays the taxes, as it is therein authorized to do, then the amounts so paid shall be a lien on the premises, added to the amount to be secured by the mortgage; but there is no provision in the mortgage that, on failure to pay fees, fines, or dues, there shall be a lien

on the property to secure their payment. The mortgage provides that it is to be void if the full payment of the principal and interest be made as therein specified, and if each of the covenants be well and truly kept and performed, as specified and provided for. It matters not whether the money received by the petitioner and secured by the mortgage be called a loan or simply an advance to her on her shares. The mortgage was given to secure the repayment of the money in the manner and upon the terms therein mentioned. Association v. Read, 93 N. Y. 474. Payments upon stock are not payments on the mortgage debt, and do not ipso facto work an extinguishment of so much of the mortgage. The payment on one is not necessarily a payment on the other. Southern Building & Loan Ass'n v. Anniston Loan & Trust Co., 101 Ala. 582, 15 South. 123, 29 L. R. A. 120. While the mere fact that a payment on stock is not itself—that is, has not the effect of—a payment on the mortgage, yet there is nothing in the articles of association or in the by-laws to prevent the parties to the transaction from so contracting. The mortgage is the contract, and it prescribes the manner and the terms in and upon which the money is to be repaid, and they are not in contravention to the by-laws or the articles of association. The agreed statement of facts shows that the sum of money evidenced by the notes, the payment of which is secured by the mortgage, was made up of monthly installments on stock, and interest and premiums on loan, and the pass book in evidence shows that the money, when paid on the notes, was so applied; thus showing the construction put on the contract by the parties themselves. So, then, the monthly payments on stock were designated in the mortgage as principal. There is no other provision in the mortgage that can be considered as securing such monthly payments. The mortgage, by its terms, was executed to secure a specific sum of money, being principal, interest, and premium, and, in addition thereto, such sums as the company would have had to pay out for insurance and taxes. If 'principal' therein mentioned was not meant to be the monthly payments provided for by the by-laws, then such monthly payments have not been made. But it is evident that 'principal,' as that term is used in the mortgage, and monthly payments on stock, are the same thing, while it is not clear what is meant by 'dues' spoken of. Let us suppose that the affairs of the company had not, by this time, gotten into the court and the hands of a receiver, can it be questioned that, on payment of all the notes provided for (there being no default shown in any of the other covenants contained in the mortgage), the petitioner would be entitled, not only to the surrender of the notes, but also to the cancellation and surrender of the mortgage? If her shares of stock had not been matured at that time, she would still be obligated to continue the monthly payments on them, for her promise and engagement as a shareholder bound her to make such payments until the maturity of her stock. But she has given no security that she would make such payments after the maturity and payment of the notes. The only effect of her failure to keep this promise and undertaking would be a forfeiture of her stock. She would then be, as to forfeiture and penalties, on the same footing with non-borrowing shareholders, who give no security for monthly payments on their stock. To hold that the mortgage was given to secure the payment of the principal of the loan, to wit, $1,800, interest and premium, and also to secure the payments on stock, as contradistinguished from such principal, would, it seems to me, place the borrowing shareholder in a worse condition than the nonborrowing shareholder. There would be no equality in this. Surely, such a condition was not contemplated in the organization of the company, in the contract for subscription of stock, or in the contract for the loan. The position of the petitioner seems to be this: She had advanced or loaned to her the estimated par value of her stock at its maturity. She was required to repay in monthly installments the amount advanced, with certain charges, as interest and premium, added thereto, in a given or definite period of time; and she was required to give security (both real estate and a transfer of her stock) that she would make the payments as specified. It was an advancement or a loan to her of a sum of money, with an agreement to repay it in monthly installments, with interest, and a 'bonus' for the loan, for the repayment of which she gave the security required. There is

no default shown in the payment of the notes or in the keeping and performing of any of the provisions of the contract. Without such default, there is no forfeiture of the mortgage, and no power in the company to sell the property conveyed by it. If I am correct in my construction of the contract, there was nothing owing on the mortgage debt at the time the affairs of the company went into the hands of the receiver, except the last note of $30.60, which became payable a short time thereafter, payment of which was tendered to the receiver, and by him refused. It appears that the receiver then sold the property, and at the sale himself became the purchaser."

A careful consideration of the record in this case and of the able oral and printed arguments submitted by the distinguished counsel representing the parties, convinces us that the views of Judge Toulmin, as above stated, are sound. We can add nothing to the admirable clearness and force with which he has presented them. The sound construction which he announces of the contract between the parties seems to us to require that the full relief sought by the mortgagor should have been granted to her. When we consider the terms of the charter, and of the by-laws, and of the mortgagor's application to become a shareholder, and of the certificate of stock, with the indorsements thereon, issued to her, and of her application for the loan, and the terms of the mortgage, the constituent elements of the 77 notes, and the practical construction put on all of these by the dealings of the parties for a number of years, we cannot question that on payment of all the notes provided for (there being no default shown in any of the other covenants contained in the mortgage) the mortgagor is entitled not only to the surrender of the notes, but also to the cancellation and surrender of the mortgage. We do not feel called upon to consider on this appeal and cross appeal the unsettled and somewhat confusing questions touching the obligations of the appellee and cross appellant as a shareholder of the stock of the company. If she is obligated to make any further payments on her stock after the maturity and payment of the notes (as to which we now express no opinion), she has given no security by the mortgage in question that she will make these further payments. The security therefor is the pledge of her stock, and the provisions for its forfeiture in case of her default in these covenants. She stands, in this respect, on the same footing with nonborrowing shareholders, who give no other security for the monthly payments on their stock than the liability of the stock to forfeiture according to its terms and the provisions of the by-laws. As Judge Toulmin so well says:

"To hold that the mortgage was given to secure the payment of the principal of the loan, to wit, $1,800, interest and premium, and also to secure the payments on stock, as contradistinguished from such principal, would, it seems to us, place the borrowing shareholder in a worse condition than the nonborrowing shareholder. There would be no equality in this. Surely such a condition was not contemplated in the organization of the company, in the contract for subscription of stock, or in the contract for the loan."

In conformity with the views we have expressed, the decree passed April 4, 1900, from which this appeal and cross appeal were taken, is amended so that it shall read as follows:

"This cause coming on to be heard on the petition of Laura J. Martinez on the 30th day of January, 1900, upon an agreed statement of facts, and

being submitted thereon for decree, and having been argued by counsel representing the parties in interest, after due consideration it is now ordered, adjudged, and decreed by the court that the sale of the petitioner's mortgaged property by the receiver in this cause be, and the same is hereby, set aside and annulled; and, it appearing to the court that all the notes evidencing the loan, except the last one, have been paid and surrendered, and that the money to pay the last one has been duly tendered to the receiver, and, on his refusal to accept it, was paid into this court, it is further ordered, adjudged, and decreed by the court that the receiver be, and he is hereby, required and directed to cancel the mortgage made by Laura J. Martinez and Joseph Martinez, her husband, to the Fidelity Trust & Loan Company on February 6, 1893, and to surrender it, together with the last note now in his hands, to the said Laura J. Martinez."

And, as thus amended, the decree of the circuit court passed on April 4, 1900, is affirmed.