[No. 982.   January 6, 1904.]

QUINTIEN MONIER et al., Appellants, v. M. C. CLARK, Receiver of American Savings and Loan Association of Minneapolis, etc., Appellee.

### SYLLABUS.

1. Upon the appointment of a receiver of an insolvent building and loan association the business of the association ceases and nothing remains but liquidation.

2. Upon the foreclosure of a mortgage by the receiver of an insolvent building and loan association against one of its members, the mortgagor should be charged with the amount of his loan, or the advancement on his stock, with interest, and credited with interest paid and interest on the instalments of interest.

3. The borrowing member of a building and loan association after the payment of its debts, is entitled to a pro rata dividend with the non-borrowing member upon his stock.

4. The bond being a Minnesota contract, the enforcement of the rights of the parties growing out of the same is governed by the laws of Minnesota:   Therefore, the four thousand dollars advancement bears interest at the legal rate as provided by the statutes of Minnesota.

Appeal from the district court of Santa Fe county, before JOHN R. McFIE, Associate Justice.

EDWARD L. BARTLETT for appellants.

Upon the premature abandonment of the enterprise of a savings and loan association, from whatever cause, the original contract between the association and the borrower cannot be carried out, and therefore neither party is bound to a literal fulfillment of the contract.

4 American and Eng. Ency. of Law (2 Ed.), p. 1081, and cases cited; Buist v. Bryan, 44 South Carolina 121; Thompson on Building Associations' chap. 8, secs. 30-42-50; and chap. 12, secs. 5 and 13; Endlich on Building Association, secs. 333, 373, 498 and 502; 2 Am. and Eng. Enc. of Law, 629, 642; Randall v. National etc., Protective Union, 42 Neb. 809; Brownlie v. Russell, Lr., 8 App. Case 248; See, also, Association v. Goodrich, 48 Ga., 445; Windsor v. Baudel, 40 Maryland, 172; Association v. Buck, 64 Md. 338, 1 Atl. 561; Cook v. Kent, 105 Mass, 246; Bank v. Whitmore, 49 N. Y. Sup. 862; and see, also, Tilley v. B. & L. Association, 52 Fed. 618; Rogers v. Hargo, 20 S. W. 430; American Savings and Loan Association v. ———— ————, 67 N. W. 1-4.

The mortgagor cannot be required to contribute to the losses of the Association, and by the terms of the covenant he is only required to contribute in the event of the continued existence and operation of the Association, and if its termination in the regular mode provided in the Articles of Association, and then only by the prolonged or extended payment of weekly dues.

Low Street Building Association, number 6 v. Zucker, 48 Maryland 448; Interstate Savings and Loan Association v. Cairns et al. (Washington), 47 Pac. 509.

The court is not bound to shut its eyes to the evident character of the transaction. It will never lend its aid to carry out an unconscionable bargain.

Railroad Co. v. Cromwell, 91 U. S. 643; Curtis v. Granite State Provident Association, 36 Atl. 1023 (Connecticut); Peoples Building, Loan & Savings Association v. Fowble et al. (Utah.), 53 Pac. 999; Howells et al. v. Pacific State Savings Building and Loan Association,

> 60 Pac. 1029; Hale v. Stenger, 61 Pac. 156; Story's Equity Jurisprudence, sec's 750-751; Wait v. O'Neil, 72 Fed. Rep. 357; Pope Mfg. Co. v. Gormally, 144 U. S. 237.

If the stipulated damages clearly are unconscionable, and so excessive as to be out of all proportion to the actual damages, the court will disregard even the intention of the parties. Such contracts, even if they were made in good faith and with full knowledge, will not be enforced by a Court of Equity.

> Wait v. O'Neal, supra; Pope Mfg. Co. v. Gormally, supra; 3 Pom. Eq. Juris., sec. 1405; 22 Ency. of Law, pp. 1013, 1022, 1028; Baxter v. Wales, 12 Mass. 365; Scott v. U. S., 12 Wall, 445; Randolph v. Quidrick Co., 135 U. S. 459, opinion by Brewer; Dalzell v. Deuber Co., 149 U. S. 323; Rust v. Conrad, 47 Mich. 454, 41 Am. Rep. 721; Waterman Specific Performance, secs. 158-9; Pomeroy on Cont., sec. 179; McElroy v. Maxwell, 101 Mo. 306; King v. Hamilton, 4 Pet. (U. S.) 311; Catheart v. Robinson, 5 Pet. (U. S.) 264; Fidelity Saving Association v. Shea, 55 Pac. 1024.

All payments, under whatever name made, whether as premiums, dues, fines or otherwise are payments upon the loan.

> Howells v. Pac. States I. & L. Co., 60 Pac. 1025, 21 Utah 49; Ashton v. Pac. States I. & L. Co. 60 Pac. 1029, 21 Utah 46; McIlvane v. Iseley, 96 Fed. 62; Nat. Mutual B. & L. Association v. Burch; 82 N. W. 837, and cases cited; Check v. Iron Belt, B. & L. Association, 35 S. E. 463; s. c., 37 S. E. 150; Strohn v. Franklin, S. & L. Am., 115 Penn. St. 278.

The Mortgage is the Contract.

> Wilson v. Martinez, 108 Fed. Rep. 707.

N. B. LAUGHLIN and TENNEYS, HALL & SWANSON for appellee.

Where the association has become insolvent, the borrowing member on a foreclosure proceeding is to be charged with the original loan and the interest thereon, and the premium, if he paid any, and is allowed credits with the interest paid by him according to the rule of partial payments, and such part of the premium, if any, as may be unearned at the time of the insolvency of the association, and no more.

> Roberts v. Am. B. & L. A., 33 L. R. A. 744; Coltrane v. Blake, 18 Fed. 785; Towle v. American Building L. & Inv. Soc., 61 Fed. 446.

When a condition justifies a court of equity in peremptorily terminating the career of the Association, the adjustment should be made as near upon the line of what would take place if the association lived out its life as possible.

> Tilley et al. v. Am. B. & L. Assn., 52 Fed. 618; Sullivan v. Stucky et al., 86 Fed. 491; Lauer et al. v. Covenant B. & L. A., 96 Fed. 775; Manorita v. Fidelity Trust & L. Co., 101 Fed. 8.

Stock payments cannot be applied on the loan.

> 4 Am. and Eng. Enc. L. (2 Ed.), p. 1059; Brown v. Archer, 62 Mo. App. 277; Strohen v. Franklin Savings Fund and L. A., 115 Pa. St. 278; Heyne v. Franklin Savings Fund & L. A., 8 Atl. 845; Price v. Kendall, 14 Tex. Civ. App. 26; Economy Bld. Assn. v. Hungerbuckler, 93 Pa. St. 258; State v. Hornbacker, 42 N. J. L. 635; Royers v. Hargo, 92 Tenn. 35; Post v. Bldg. & L. A., 97 Tenn. 48; Mechanics Bldg. & L. A. of New Brunswick v. Conover, 14 N. J. Eq. 219; Herbert v. Mechanics Bldg. & L. A. of New Brunswick, 17 N. J. Eq. 497; Wier v. Granite State Assn. etc. (N. J. Eq.), 38 Atl.

643; Wm. D. Nale Receiver of the American Savings and Loan Assn. v. Ella Carins et al., 44 L. R. A. 261; Post v. Mediums B. L. A., 34 L. R. A. 203, 204; Pioneer Savings and Loan Assn. Co. v. Cannon, 33 L. R. A. 112, 96 Tenn. 599; Southern B. & L. v. Anniston Loan & T. Co., 101 Atl. 582; State of Washington v. Hornbecker, 42 N. J. L. 635; Eng. B. & L. A., sec. 452; Reeve v. Ladies Bldg. Assn., 18 L. R. A. 129, 58 Ark. 335, 101 Ala. 582.

A mortgage given in one state to secure money borrowed in another State, where the rate of interest is different, and where the contract provides that the debt shall be paid in the state where the money was loaned the rate of interest of that state will control.

Bedford v. Eastern B. & L. Association, 181 U. S. 227; Post v. Mechanics B. & L. Association, 34 L. R. A. 201; Miles v. New South B. & L. A., 111 Fed. Rep. 946; McMurray v. Gosney et al., 106 Fed. 11; United States Saving and Loan Co. v. Harris et al., 113 Fed. 27; McLlwaine v. Ellington, 55 L. R. A. 955.

Unconscionable contract.

Roberts v. Am. B. L. A., 33 L. R. A. 744; Endlish Bldg. Assn., sec. 415; Goodman v. Durant Bldg. & L. Assn., 71 Miss. 310.

The stockholders of a building and loan association are required to take notice of the by-laws of the association and must live up to them.

Columbia B. & L. A. v. Junquist et al. (Ill.),—Fed. 645; Lauer et al. v. Covenant B. & L. A., 96 Fed. 775.

### STATEMENT OF FACTS.

The statement of facts in appellants' brief is a fair and complete statement of the facts in the case. It is adopted by the court, as follows:

This case was brought in the court below by M. C. Clarke, the Wisconsin ancillary receiver of the American Savings and Loan Association of Minneapolis, Minnesota, which, by proper proceedings had by the attorney-general of that State, was declared to be insolvent by the proper court, and W. D. Hale was appointed general receiver in January, 1896.

This association was originally incorporated in April, 1887, as the American Building and Loan Association by which name the contract sued on in this case was made by appellants, and on July 26, 1892, its name was changed to the American Savings and Loan Association.

The note and mortgage sued on here were deposited by the association with the treasurer of the State of Wisconsin to enable it to do business in that State under its laws and M. C. Clarke was appointed the Wisconsin receiver of the association, and by proper order of the court was directed to bring the proceedings to foreclose the mortgage in this case.

The defendants below, Florence Donoghue and Quintien Monier, as partners, applied for membership in the original association, December 17, 1888, and subscribed for and received 120 shares of stock of the par value of $100 per share, evidenced by a certificate, No. 16216, dated December 26, 1888, and paid $120 admission fee and agreed to pay monthly sixty cents per share thereafter until the maturity of the stock which was estimated to mature in nine years.

On January 22, 1889, Donoghue and Monier applied for and obtained a loan from the association of $4,000, assigned their stock to the association and executed as additional security the mortgage and bond mentioned in the record. Afterwards in 1890 by satisfactory agreement with the association the number of their shares was reduced to eighty, but no new certificate was issued therefor.

On the fourth of February, 1890, Donoghue and Monier assigned this certificate of shares to Edward L. Bartlett, as trustee for their creditors, under a deed of trust, in which he assumed to make all payments upon such shares of stock as required by the certificate, bond and mortgage. This he did, paying all taxes, insurance, the sixty cents per share stipulated for in the certificate, to the amount of $48 per month, and $20 per month in addition, making a monthly payment of $68 down to the time of the insolvency of the association. Such payments in all amounting to $5,644, on account of this contract, being $124 more than the amount of the loan, with the six per cent interest thereon.

On July 2, 1898, this suit was filed in the court below by the receiver, M. C. Clarke, praying for a judgment of four thousand dollars with interest, attorney's fees and costs, and foreclosure of the mortgaged property. Jury was waived and trial had to the court, which on June 9, 1902, entered its final judgment and decree for the sum of $5,198.50, with $200 attorney's fees. Appeal therefrom was prayed and allowed, and the case is now here for review upon the sole question of the application of the moneys paid by appellant upon this contract whether all such money paid should be applied toward the reduction of the mortgage or the sixty cents per share or $48 a month should be considered payment on the shares of stock alone, and whether or not the appellee is entitled to any judgment until he has accounted for the shares of stock assigned to the association as collateral security for the loan.

OPINION.

BAKER, J.—Appellants have made seven assignments of error. One to six inclusive will be considered together; in fact, they all go to the question of what amount of all moneys paid by appellants shall be credited upon their loan of four thousand dollars.

One of the first questions to arise for the consideration of a receiver of an insolvent building and loan association is the application of the moneys paid by a borrowing member. If there were no borrowing members the concern would be settled like any other insolvent institution, the stockholders receiving equal benefits and bearing equal burdens. Does the fact that a non-borrowing member becomes a borrowing member change his relation with the non-borrowing members? Section 2, article 5, of the by-laws of the American Building and Loan Association provides that no member can secure a loan from the association until after he shall have been a member at least three months, unless the board of directors shall for good reason determine to the contrary. The by-laws also provide that no one can borrow of the association unless he be a member thereof.

The appellants, Monier and Donoghue made their application to become members of said Association on the seventeenth of December, 1888, and made application for 120 shares of stock, of the par value of one hundred dollars each. On December 26, 1888, a certificate was issued to them for said number of shares. Subsequently, on application of Donoghue and Monier their number of shares of stock was reduced from 120 to 80, and such reduction having no bearing upon the issues in this case it will not further be mentioned. On January 22, 1889, said Donoghue and Monier applied for and obtained a loan from the association of four thousand dollars. If the association had become insolvent and passed into the hands of the receiver between the dates of December 26, 1888 and January 22, 1889, of course Donoghue and Monier, through their trustee would have been entitled to whatever benefits there might be coming to them on their shares of stock, or been required to have borne their share of the burdens. Does the fact that the insolvency of the concern occurred after they had made their loan

change their relationship with the non-borrowing members? The presumption is that they became members of the association for the profit expected to be derived from the investment. Aricle 4 of the by-laws of the association provides that "there shall be two funds; the loan fund, and the expense fund." The loan fund is derived from many sources, among them, fifty cents per share per month paid on the stock, fines collected for non-payment of dues, fines for failure to insure property in the time prescribed, fines for failure to pay assessments of taxes when due upon property covered by the loan and interest on the sums loaned. Section 6, article 4 of the by-laws provides that on the first day of the months of January, April, July and October, in each year, all undivided profits shall be apportioned and credited to the shares in force. It is not incumbent upon any stockholder to become a borrower. If he becomes a borrower it is at his own volition. The rules and regulations of the concern governing loans are known to the borrowing member. The by-laws of the association also provide that if any member desire to borrow from the association any given amount of money he is required to file his application with the president, which is required to be accompanied by a sealed bid stating the amount of premium per share, in addition to six per cent interest, which the applicant is willing to pay for such loan; and further provides that where there are several applications, in event of a scarcity of money in this fund, the highest bidder shall prevail when the bids are the same and the one offering the best security shall be first accepted. The by-laws further provide how the bids shall be opened and that any member or his attorney may be present when the bids are opened. Thus, it will be observed that the applicant for a loan must know just what he is doing in order to secure his loan. The by-laws, section 9, article 5, under the head of "Loans" provides that "members obtaining loans shall execute such notes or bonds and mort-

gages as shall be required by the board of directors."
The appellant, Donoghue and Monier secured from the
association as an advancement on their eighty shares of
stock, fifty cents on the dollar.   They assigned their
eighty shares of stock to the association as collateral se-
curity and gave a bond to the association that they would
make all paymtnts as required by the by-laws of the as-
sociation to mature such stock, which, it was estimated,
would mature in nine years, and they further agreed to
pay six per cent interest on the $4000 advanced, or
loaned them by the association.   It is provided in the
bond that when the eighty shares of stock shall have been
fully paid up or matured, that the stockholders shall
transfer their stock to the association which was to be
accepted by the association as full payment of the ad-
vancement or loan of $4000.   Should the association be
prosperous and the profits sufficient to mature said
shares before nine years, the matured stock transferred
to the association would be payment in full of the loan.
To secure said bond the appellants Florence Donoghue
and Antonita G. Donoghue, his wife and Quintien Mon-
ier executed a deed of trust (in effect a mortgage) upon
certain real estate.   This mortgage is sought to be fore-
closed against the Donoghues and Monier, and Bartlett,
trustee, for the payment of $4000 advanced on the stock
of the said Florence Donoghue and Quintien Monier, the
money loaned them, with seven per cent interest.

Appellants resist the foreclosure, claiming that they
have paid in monthly payments and interest $5644 down
to the time of the insolvency of the association,
which said $5644 is $124 more than the amount of
the loan with six per cent interest at the date of ap-
pellants last payment, and appellants therefore ask judg-
ment against, the association for the said sum of $124.

It has been held in Strauss v. Carolina International
Building and Loan Association, 117 N. C. 308, 30 L. R.
A. 693; Thompson v. N. C. B. & L. Assn., 120 N. C.

420; Buist v. Bryan, 44 S. C. 121, 29 L. R. A. 123; Rochester Savings Bank v. Whitman, 25 App. Div. 491, and Randall v. National B. & L. Assn., 42 Neb. 809, that a proper and equitable settlement of an insolvent building and loan association is to charge the borrowing member with the amount of the loan, or advance on his stock, and to give him credit for all moneys paid the association for fines, penalties, dues and interest. As between the association, as a unit, and the borrowing member, this would seem to be equitable; but when you con sider the non-borrowing member, who went into the association for the same purpose as did the borrowing member and stood in the same position until after the loan to the borrowing member, it presents a different phase. In cases of an insolvent association when the association has been fully wound up by the receiver all stockholders or shareholders should receive their pro rata of the assets of the association. In case the borrowing member is allowed to pay off his loan or advancement on his stock with the moneys paid the association by him with interest on his payments and if the assets of the association were sufficient to refund to the non-borrowing members all moneys paid in by them and interest on each payment at the legal rate to the time of insolvency, and there were still left a large surplus to be distributed to the holders of such stock, it would scarcely be expected that the borrowing members, having settled their interest in the association, would be permitted to participate in said surplus. Should this condition of affairs exist with an insolvent building and loan association, it is plain to see that the non-borrowing member would receive more for his money invested than the borrowing member, which would be inequitable, and no chancery court would permit such a settlement of an insolvent building and loan association. On the other hand, if the borrowing member is allowed to pay off his loan with his moneys paid in, and when the insolvent association is wound up, it

is ascertained that the assets are insufficient to refund the amount paid in by the non-borrowing members with legal rate of interest on such payment, or are insufficient to even refund the principal of the moneys paid in by the non-borrowing members, then in that case the borrowing member would receive one hundred cents on the dollar with interest on the moneys paid the association by him while a non-borrowing member would suffer a loss either great or small. The injustice of this last proposition is apparent upon its face. Considering the fact that the non-borrowing and the borrowing members joined the association, paid their money to the association for the same purpose, to-wit, the profits to be made upon their investments, one waiting until the maturity of the stock that he might take out his money and the profits, the other selling his stock, or receiving an advance upon it and contracting to pay enough money upon it to mature his stock. In other words, he simply seeks to take the profits out in advance   Certainly the non-borrowing and the borrowing member should stand upon the same footing. If the association is a winner, they should all share equally in the profits; if it is a loser, then all should lose alike.

Reasoning as we do, we are of the opinion that so far as the stock is concerned and the payments thereon that the borrowing and non-borrowing member should equally receive the benefits and bear the burdens; that the borrowing member should pay his loan with interest, the same as though it were an indebtedness due the association from any other source, and thereafter when the affairs of the association have been adjusted that he participate in the assets in the same manner as does the non-borrowing member. Strohen v. Franklin Saving Fund & Loan Assn., 8 Atl. 843; Sullivan v. Stucky, 86 Fed. 491; Towle v. Am. B. & L. Society, 61 Fed. 446; Manorita v. Fidelity Tr. & Loan Co., 101 Fed. 8; Post v. B. & L. Assn., 34 L. R. A. 201, 37 S. W. 216; Young

v. Improvement Loan Assn., 38 S. E. 670. We also cite in support of this position, the case of Hale, Receiver, 261 (North Dakota), which is a very carefully considered case, and the many authorities therein cited. The case of Sullivan v. Stucky, supra, is strikingly similar to the one under consideration and is entirely in accord with the views herein expressed.

The contract between Donoghue and Monier and the association was a Minnesota contract. Bedford v. B. & L. Assn., 181 U. S. 242; B. & L. Co. v. Miller, 118 Fed. 369; McMurray v. Gosney, 106 Fed.11; Miles v. B. & L. Co., 111 Fed. 946. The foregoing citations fully answer the seventh assignment of error as to the rate of interest allowed appellee.

The learned counsel for appellants, in his statement of facts, employs the following language in speaking of the amount of the judgment rendered in the court below, $5198.50 with $200 attorney's fees: "Appeal therefrom was prayed and allowed, and the case is now here for review upon the sole question of the application of the moneys paid by appellants upon this contract whether all such moneys should be applied toward the reduction of the mortgage or the sixty cents per share or $48 a month should be considered payment on the shares of stock alone, and whether or not the appellee is entitled to any judgment until he has accounted for the shares of stock assigned to the association as collateral security for the loan." We think this fairly represents the status of this case before the court. From what has been said in this case we are of the opinion that the appellants must pay the amount of their loan with interest and that they must look to the receiver at the final settlement of the affairs of the association for such dividends, if any, that are to come to them on account of their holdings of stock. When the association became insolvent neither party could fulfill the terms of the contract. Therefore, it is just and equitable that appellants should pay the amount of money by them received at the legal rate of

interest as required by the laws of the State of Minnesota, to-wit, seven per cent and that they be credited upon said sum for all interest by them paid and interest upon partial payments of interest.

For the reasons given we are of the opinion that the judgment of the lower court should be affirmed.

Mills, C. J., and Parker, A. J., concur.

McFie, A. J., having tried the case below, and Pope, A. J., did not participate in this decision.