Vol. 127.] SEPTEMBER TERM, 1907.     537

Commonwealth v. Home & Savings Fund Co. Bldg. Assn.

CASE 55.—ACTION BY THE COMMONWEALTH AGAINST THE HOME & SAVINGS FUND COMPANY BUILD-ING ASSOCIATION TO RECOVER TAXES ON ALLEGED OMITTED PROPERTY.—December 13.

# Commonwealth v. Home & Savings Fund Co. Bldg. Assn.

Appeal from Jefferson Circuit Court; Common Pleas Branch; Second Division.

THOS. R. GORDON, Judge.

Judgment for defendant, Commonwealth appeals—Reversed.

1. Building and Loan Associations—Description.—Building and loan associations are a peculiar kind of corporation usually composed of aggregations of people dealing exclusively among themselves in accumulating a savings fund for investment in homes, more in the nature of limited co-operative home building copartnerships than commercial bodies.

2. Taxaticn—Building and Loan Stock.—Under Ky. Stats., 1903, section 4093, providing for the taxation of building and loan shares to the shareholders to the amount paid in and not withdrawn on September 15th of each year, provided that borrowing members should not be required to list their shares, if the amounts borrowed equalled or exceeded the amount paid in on the shares, members are only taxable on the amount of their stock remaining in the association on the date specified over and above the amount of any loan or withdrawal that may have been made on such stock.

3. Same—Notes and Bonds from Borrowing Members.—Under Ky. Stats., 1903, section 4093, providing for the assessment of shares in building associations, and section 4094, provid-ing for the assessment to the association of its surplus funds and undivided profits, the association is not taxable on notes and bonds given by borrowing members to secure loans from the association.

4. Same—Bond Issue.—Where it was not shown that money raised by a building and loan association on bonds, and loaned out on mortgages, was a part of the association's "surplus" or undivided profits, it was not taxable to the association under Ky. Stats., 1903, section 4094, providing that such associations should list only surplus funds and undivided profits for taxation.

5. Same—Undivided Earnings.—Ky. Stats., 1903 section 4094, declares that each building and loan association shall list with the assessor the amount of its surplus fund and undivided profits on hand and undistributed on September 15th of every year. Held, That undivided profits on hand on such assessment date, less the payment of current indebtedness as of that date, were taxable, notwithstanding the association's distribution dates were January 1st and July 1st, respectively.

JOHNSON & HIATT for the Commonwealth.

JOHN S. JACKMAN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE O'REAR—
Reversing.

This was a proceeding in the Jefferson county court by the auditor's agent against appellee, a building and loan association organized under the laws of this State, to have assessed for taxation for county and State purposes what was claimed by the auditor's agent to constitute parts of the surplus fund and undivided profits of the association which had been omitted in its tax assessment for the years 1901 to 1905. Upon the agreed facts which will be adverted to presently, the county court refused to list the assets mentioned, which action, upon appeal to the circuit court, was affirmed.

Omitting from the agreed statement of facts what appears to us to be mere bookkeeping features, the following, for the year 1904, will serve to illustrate

Vol. 127.]    SEPTEMBER TERM, 1907.    539

Commonwealth v. Home & Savings Fund Co. Bldg. Assn.

the situation, showing assets and liabilities of the corporation for that year, as of September 1, 1904:

### Assets.

| | | |
|---|---:|---:|
| Mortgage Loans | $777,500 | 00 |
| Pass Book Loans | 15,658 | 00 |
| Real Estate | 2,591 | 30 |
| | | |
| Total Assets | $795,749 | 30 |

### Liabilities.

| | | | | |
|---|---:|---:|---:|---:|
| Cash overdrawn | $ 6,522 | 70 | | |
| Dues | 653,000 | 04 | | |
| Paid up stock | 47,500 | 00 | | |
| Bonds outstanding | 64,900 | 00 | | |
| Interest on bonds | 1,298 | 00 | | |
| Sundry expenses | 40 | 00 | $773,268 | 74 |
| | | | | |
| Excess of assets over liabilities | | | $ 22,480 | 56 |
| Reserve Fund | $10,918 | 94 | | |
| Balance | 11,561 | 62 | $ 22,480 | 56 |
| | | | | |
| Total Assets | | | $795,749 | 30 |

Paid in by stockholders:

| | | | | |
|---|---:|---:|---:|---:|
| Dues | $653,000 | 04 | | |
| Paid up stock | 47,500 | 00 | $700,500 | 04 |
| | | | | |
| Surplus and undivided profits | | | $ 95,249 | 26 |

Amount listed by taxation 1905:

| | | | | |
|---|---:|---:|---:|---:|
| Personalty | $ 11,068 | 94 | | |
| Real Estate | 3,070 | 00 | $ 14,138 | 94 |
| | | | | |
| Balance | | | $ 81,110 | 32 |

Now it is contended by appellant that the difference between the book assets and stock liabilities of the association constituted its undivided profits and

surplus, being $95,249.26: that, as only $14,138.94 were assessed ($3,070 of the sum representing real estate), the balance of $81,110.32 is the unassessed or omitted surplus and undivided profits.

It becomes necessary at this point to examine the statutes under which this assessment was made. They are:

Section 4093, Ky. Stats., 1903: "That the shares of building associations or building and loan associations shall be taxed as other individual personal property, and shall be listed with the assessor for that purpose by the owners of said shares, the amount so listed by every owner or shareholder to correspond with the amount paid in and not withdrawn by the said shareholders on the fifteenth day of September of every year: Provided, that the borrowing members shall not be required to list their shares, if the amounts borrowed by certain members equal or exceed the amount paid in on their respective shares. The shares of infants shall be listed by the parents or guardians of such infants."

Section 4094, Ky. Stats., 1903: "The president or secretary of every such building association or building and loan association shall list with the assessor the amount of such surplus funds and undivided profits as the association may have on hand and undistributed on the fifteenth day of September of every year."

It will be at once perceived by those who are familiar with the taxing statutes of this State that there is not only a specific, but a different, mode provided for assessing building association shares and other property. But the difference exists only in the method of assessment. There was neither purpose nor power in the Legislature to discriminate in favor

of either class.  The general policy of taxation in this
State is to tax all property once, and once only, for
each fiscal year.  It is well recognized that, in spite
of the minute pains of the Legislature and taxing
officials, it sometimes happens that some property is
not taxed at all, while other kinds are sometimes
indirectly taxed twice.  Still, the general purpose
prevails, and it is believed is attained.  It must be
conceded that the Legislature has, and must have, a
free hand in adopting methods of assessment best
calculated to further the great purpose of equal and
just taxation.  It must be manifest that no system
could well be adopted applicable alike to all property
that would afford equal taxation.  The system of
assessment adapted to one kind of property would be
wholly inadequate for another kind.  Numerous in-
stances are afforded by the statutes of such dis-
similarity.

Building and loan associations are a peculiar kind
of corporation.  They are usually aggregations of
people who deal exclusively among themselves in
accumulating a kind of savings fund for investment
in homes.  They are not commercial bodies in the
large or popular sense of the term.  They are, rather,
limited, co-operative, home building co-partnerships.
The chapter of the statutes providing for their
organization treats them differently from other cor-
porations.  So the taxing statutes treat them with
respect to their real character.  It is recognized that
property invested in such associations should be
taxed once for each unit of government under which
it exists.  In devising a just system of reaching this
property, and to tax it only once, the Legislature has
looked below the mere apparent thing, and ignored
as far as was practical, the corporate entity.  It

required the shareholders' or members' interest to be assessed against such owner, where it was susceptible of a separate valuation. To that end it required all shares of association stock to be assessed to the shareholders. It fixed the sure method of valuation, of assessing each share at what had been paid in on it and not withdrawn by the member. Obviously, if a share nominally rated at $100 had paid in on it only $10, its assessable value ought not to be greater than $10, because that is all that it could be worth, and is all the property that the shareholder owns in that form of investment. But if the shareholder has withdrawn $5 on that share, then what he has left in that investment is only $5. He should be taxed on that sum as represented in the building and loan share, and no more. The $90 not yet paid in ought not to be taxed, because it does not represent property at all; at most, it is only a liability. Nor should the $5 withdrawn be taxed as a share value, because it is no longer there. For the same reason, if the member has withdrawn the total sum invested in the share, evidenced by a loan or withdrawal, he ought not to be taxed upon that share, because its value as property has been extinguished, and that which once gave it value, to-wit, the sum paid in on it, has been withdrawn and invested elsewhere, where it doubtless pays a tax. But there may be an accumulation in the hands of the association above the sums paid in on each share, and which, until divided among the shareholders, none of them can be said to have an exclusive right to. This fund, whether it be a surplus which the association carries as a guaranty against losses, or for the profit of the members, not being otherwise taxed, is assessed as against the association. That part of the accumula-

tions in addition to surplus, and out of which dividends may be apportioned to the shareholders, is likewise assessed against the association.

But the object of the association is to loan its funds to its members, out of which loans they build houses upon their lots. As some may borrow more than they have paid in on their "shares," thus anticipating their own payments on their share subscriptions, they secure their obligation to continue paying on their shares till they are matured, by mortgage on their land. These obligations, whether they are called mortgage notes or mortgage bonds, are primarily to secure the obligor's agreement to continue paying in on his share subscription until it has come to be equal to its par value, at which time his obligation is fulfilled. In this co-operative plan by which the weekly or monthly installments, small in each instance, but considerable in the aggregate, are loaned to one another by the membership, in their co-operative capacity, it is at last each one's furnishing the means to build his own home. For that reason the notes and bonds of the corporation are not made assessable under the statute. The property which they represent must from its very nature surely be subject to taxation. The Legislature saw that to tax such notes, and to tax the corporate shares, too, would be double taxation in its worst form, for that would tax both the member's property, and his indebtedness representing its value. The statute has been upheld in not taxing such notes as being not in contravention of the provision of the Constitution that all property shall be taxed. Commonwealth v. Fayette Building Ass'n, 71 S. W. 5, 24 Ky. Law Rep. 1223.

It was pointed out in argument that some property

holders are taxed upon the value of their property without being allowed to deduct their indebtedness constituting a lien upon the property, although such debt was also taxed in the hands of the creditor. From this it is claimed that a discrimination is worked in favor of members of building and loan associations. We think it is exceptional in our tax system when the result is that the property holder is taxed upon his indebtedness, or rather upon his property in spite of his indebtedness. Property may assume so many different forms that it is difficult, if not impossible, to devise a plan by which none would escape taxation. For that reason, probably, legislators are always careful to lay hold upon that form which is least apt to escape assessment. Tangible property is therefore nearly always taxed. As the holder of mere choses in action may in so many ways elude listing them, or may even be beyond the taxing jurisdiction, if the debtor were allowed to deduct them it would frequently happen that the primary property would be excused, while its secondary form (the debt) would escape. It may be that some such consideration has deterred the Legislature in the past from allowing such deductions, although it was recognized that frequently double taxation (though not against the same owner) would ensue. But where it is sure, as in the case of domestic building associations confining their operations to the legitimate business for which they were formed, that no escape from taxation is possible by the failure to assess the real value of the property in one form or another, it is both permissible and proper (if we may express an opinion concerning a matter purely legislative) that the deduction should be allowed. There is enough of difference between such properties and the

peculiar form of indebtedness upon them to the association, and property generally indebted, to uphold the distinction recognized by the Legislature in providing different modes of assessment, to support the classification as reasonable and natural. A wise government taxes property, not liability. It taxes a man upon what he has, not upon what he has not. If the member of the association has a lot unimproved, it is taxed at its value. If he has invested his earnings in shares in a building and savings association until he can have accumulated enough to begin the building of a house, such accumulation in the hands of the association is taxed as against him. If he "borrows" from the association, withdrawing all he has paid in, and anticipating his future payments, such sum is necessarily invested in the real estate which is pledged to secure his obligation. He pays then upon the enhanced value of the real estate; enhanced by employing this very money in building a house upon the lot. Thereafter he is not taxed upon his "shares," because thenceforth they represent, not property, but debt. However, he is taxed upon his lot, although some part of it may also represent debt; but that is inevitable, and is in accordance with the State's plan of taxation as generally exercised. Besides, the "nonborrowing" members of the association pay taxes upon their share investments, which are invested in the loans to the "borrowing" members. Thus it is seen that every feature of property owned by anybody in these ventures is taxed certainly once. The scheme of taxation is legitimate, just, and not discriminatory.

It is true some loans are made upon "pass books," meaning that the association has allowed its "borrowing" member to temporarily withdraw a part of

his share investment. But he nevertheless pays taxes upon what is left in the association, represented by his shares, and the debt, so-called, is only another form of his obligation to mature; that is, pay up in full his share subscription.

It further appears in this case that appellee issued bonds and sold them, of which $64,900 are now outstanding. Appellant contends that in the item of $777,500 of loans is the money realized from the bond issue, and hence that, to the extent that borrowed money is loaned out on mortgages, the latter should be taxed as against the association. A sufficient answer to this contention seems to be that the statute does not authorize such an assessment against the association unless it be among either its "surplus" or "undivided profits." There can be legally neither surplus nor undivided profits so long as there is an indebtedness against the association above its assets. But it is contended that there was for the year 1904, as shown in the statement above, a difference of $22,480.56 between assets and liabilities, of which $10,918.94 was set apart as a reserve fund by the association (and which was duly listed by it), leaving $11,561.62 of earnings not listed. Appellee contends that this balance should not be regarded as taxable until after the period of distribution, viz., January 1st or July 1st, and the county court and circuit court each so held. But we think whatever was on hand on September 15th (now September 1st) of undivided earnings is taxable against the association. But as the undivided earnings are subject to the payment of current indebtedness against it as of that date, and as the statute clearly indicates that only the surplus earnings were intended to be taxed, we think current indebtedness should be deducted.

The apparent difference between assets and stock liabilities is shown on the statement above to be $95,249.26. From this should be deducted bonds outstanding of $64,900, balance $30,349, which should be further credited by cash overdrawn by the association, and which it was owing its bankers $6,522.70, interest on bonds $1,298, sundry expenses $40, balance undivided $7,860.70, profits and surplus $22.488.56. Of this sum there was listed by the association personalty $11,068.94, real estate $3,070, total $14,138.94, balance $8,349.62, which sum we hold was assessable as undivided profits for the year 1904, and should have been listed, but was omitted by the association.

Without setting out here the detailed calculation, we will add that, following the same principle, for the year 1900, there was omitted $2,433.07; for 1901, $1,731.25; for the year 1902, $4,357.54; and for the year 1903, $5,819.46.

The judgment is reversed, and cause remanded for proceedings consistent herewith.