JOHN G. SMITH, BANK COMMISSIONER, ET ALS.,

*vs.*

BATH LOAN & BUILDING ASSOCIATION

Sagadahoc.    Opinion February 9, 1927.

*As a rule it is the proper procedure to apply to the court in equity for the appointment of a receiver of a loan and building association.*

In view of the dual relation of membership and debtor between the association and the borrowing stockholder, the equitable doctrine of set-off is not applicable in the case at bar.

On report on an agreed statement.    A petition by the receiver of the Bath Loan & Building Association seeking instruction as to the performance of certain of its duties.    The issue involved principally is as to whether a stockholder in a loan and building association in case of voluntary liquidation, who is indebted to the association, upon a loan secured by mortgage of real estate, or the pledge of his shares , is entitled to the right of set-off.    By agreement the case was reported to the Law Court on an agreed statement of facts.    Decree below to

be drawn by the attorney for the receiver in accordance with the opinion.

The case is fully stated in the opinion.

*Walter S. Glidden,* for Bath Trust Company, the petitioning receiver.

*Cram & Lawrence,* for borrowing shareholders.

SITTING: WILSON, C. J., PHILBROOK, STURGIS, BASSETT, JJ., MORRILL, A.R.J.

PHILBROOK, J.    The defendant association is in the hands of a receiver, and this proceeding is brought by that official asking for instruction as to the performance of certain duties.

On taking possession of the books, records and papers of the defendant association, the Receiver ascertained that out of a total number of approximately two hundred seventy-five shareholders, one hundred and thirty-four, on May 10, 1926, the date of the injunction against doing further business, were what is commonly known as "borrowing shareholders;" that is to say, had procured cash loans from the association, evidenced by their respective promissory notes, and secured by mortgage of real estate and by a pledge of their respective shares of stock, as additional collateral; all of such loans being made in the ordinary course of business, and in accordance with the by-laws of the association, and the statutory provisions regulating the same.    None of said borrowing shareholders were required to pay a premium for their respective loans.    The remaining shareholders of the association, (with the exception of five who effected so-called "share loans," that is, had borrowed money from the association upon the security of their shares alone), were, on said date, ordinary shareholders, who had not availed themselves of their privilege as members of the association to apply to and receive from it, any cash loans, and who may be designated as "investing shareholders."

Immediately upon the qualification of the Receiver, the claim was made to it by the so-called "borrowing shareholders" or by some of them, that, in settling and adjusting their respective loans, they were legally and equitably entitled to set off against the original amount of such loans, the withdrawing value of their respective shares, as at May 10, 1926, and were legally and equitably entitled, upon payment

of the difference between the original amount of such loans, plus accrued interest, if any, and the withdrawing value of their shares, to receive a full discharge of their obligations to the association and a cancellation, surrender and release of their respective promissory notes, and of the mortgages given to secure the same, and of the shares pledged as additional collateral thereto.

In consequence of such claim the receiver instituted this proceeding asking the court for instruction as to whether it shall allow in set-off, to such borrowing shareholders, the full withdrawing value of their respective shares in the association. The case was heard below by a single justice, on an agreed statement of facts, and reported to this Law Court, which tribunal is to render such decision thereon, and give such instructions, as may be equitable and proper.

Except in a few jurisdictions where the statutory remedy of dissolving building and loan associations on suit brought by state officials is exclusive, and precludes the appointment of a receiver in an ordinary action in equity, it is the rule, both under statute and otherwise, that resort may be had to a court of equity for the appointment of a receiver of a building and loan association, and on the filing of a sufficient bill by the proper party, the court will appoint a receiver when it appears that it is unsafe and inexpedient to further continue the business, either because of a loss of public confidence therein, or because of its insolvency or mismanagement. 9 C. J. 993, and cases there cited. Hence, *quere*, whether this proceeding may be properly said to have been instituted under the provisions of P. L. 1923, chap. 144, sec. 50, as suggested in the agreed statement of facts, since that section applies only to "any savings bank, or other institution for savings," and, strictly speaking, building and loan associations do not fall within either of these two classes.

In *Palmer* vs. *Construction Co.*, 121 Maine, at Page 190, our court has said that "The principal object of a loan and building association is to create a loan fund for the benefit of its borrowing members, the underlying idea being that by means of the system of small periodical payments provided, people of limited means will be enabled to become the owners of homes, and thrift, economy, and good citizenship will thereby be promoted." Reducing the above quotation to its lowest terms, it is plain that the principal object of a loan and building association is to produce a loan fund for the benefit of its

borrowing members, hence it is not a "savings bank or other institution for saving."

That such is the object has also been held in *Johnson* vs. *National Building Asso.* 125 Ala. 465; 28 S. 2; 82 Am. St. Rep. 257; *National Home Building Asso.* vs. *Home Savings Bank*, 181 Ill. 35; 54 N. E. 619; 72 Am. St. Rep. 245; 64 L. R. A. 399. *Commonwealth* vs. *Home Building Asso.* 127 Ky. 537; 106 S. W. 221; *Eversman* v. *Schmitt*, 53 Ohio, St. 174; 41 N. E. 139; 53 Am. St. Rep. 632; 29 L. R. A. 184; (a case arising where the association was insolvent) *Folk* vs. *State Capital Asso.* 214 Pa. 529; 63 Atl. 1013; *Robertson* vs. *American Homestead Asso.* 10 Maryland, 397; 69 Am. Dec. 145, and extended note thereunder.

Under the general rule of equity jurisdiction above quoted, however, this case is properly before us.

As already intimated, the principal issue, as between the non-bordowing and the borrowing shareholders is whether the latter must, by reason of the insolvency of the association, and its consequent inability to carry out its original plan of operation, pay to the receiver the entire amount of their original loans, and await the settlement of the receiver's account for a return to them of the value of their shares as established by subsequent developments, or be allowed the withdrawal value of their shares in their settlement with the receiver.

The receiver's position is that all borrowers must at once pay the full amount of their original loan, being allowed no set-off or credit for any value inhering in their shares, but being obliged to wait for liquidating dividends at the end of the receivership. The borrowing shareholders oppose this contention.

Loan and building associations are creatures of statute, and it follows that the statues which give them being must be followed so far as provisions for their existence, powers, rights and liabilities, as well as the rights and liabilities of their members, are concerned. In respect to those matters where no such provisions are made, the general principles of law and equity will prevail.

Neither in R. S. Chap. 52, nor in P. L. 1923, Chap. 144, an extensive act "to revise and consolidate the banking laws of this state," are to be found any provisions relating to the marshalling of assets, or determination of the rights and liabilities of members, in those instances where the association has become insolvent.

The borrowing shareholders, to some extent at least, rely upon the provisions of P. L. 1923, chap. 144, sec. 110, which reads as follows:

> "A borrower may repay a loan at any time upon ap-
> "plication to the association, whereupon, on settlement of
> "his account, he shall be charged with the full amount
> "of the original loan, together with all monthly install-
> "ments of interest, premium and fines in arrears, and shall
> "be given credit for the withdrawing value of his shares
> "pledged and transferred as security, and the balance shall
> "be received by the association in full satisfaction and dis-
> "charge of said loan."

This section is applicable only when the association is a going, solvent concern, for it is thoroughly settled by the authorities that when insolvency ensues the contract between the borrower and the association is abrogated. *People's Building and Loan Asso.* vs. *McPhilamy,* 81 Miss. 61; 32 South, 1001; 95 Am. St. Rep. 454; 4 R. C. L. 387; 9 C. J. 991, and cases there cited.

Statutes and rules conferring the right of withdrawals are not applicable after the association becomes insolvent, and a member then has no right to withdraw or to perfect an incompleted withdrawal. In *New Jersey Bldg. Loan & Inv. Co.* v. *McNulty,* 71 At., 493, the court says that "these provisions as to the right to withdraw, and the terms upon which such withdrawals are to take place, are dependent upon the association being a going concern. They cannot apply during insolvency. Insolvency at once abrogates such provisions of the contract between the association and the shareholders." See also *Groover* v. *Pac. Coast Sav. Soc.* 164 Cal. 67; 127 P. 495; Ann. Cas. 1914 B. 1261; *Chapman* v. *Young,* 65 Ill. A, 131, where this rule is fully discussed.

Where a building and loan association becomes insolvent, three views have been advanced in regard to the relative rights and obligations of the borrowing and the non-borrowing shareholders. The first view is that the relation between the association and the borrowing shareholder has been changed by the circumstances to one subsisting between an ordinary creditor and debtor, and that the borrowing shareholder is to be charged with the amount actually received by him, with interest at the legal rate, and credited with all payments made, whether by way of dues, interest, or premium, according to

the rule governing partial payments. Such view is commonly called the Maryland rule and is followed in *Flinn* vs. *Interstate Bldg. Association*, 141 Fed. 672; *Miles* vs. *New South Bldg. Association*, 111 Fed. 946; *Manorita* vs. *Fidelity Trust Co.* 101 Fed. 8; *City Loan Association* vs. *Goodrich* 48 Ga. 445; *Preston* vs. *Woodland*, 104 Md. 642; 65 A. 336; 10 Am. & Eng. Ann. Cas. 389; *Cook* vs. *Kent*, 105 Mass. 246; *Carpenter* vs. *Lewis*, 65 S. C. 400; 43 S. E. 881; *Snyder* vs. *Fidelity Sav. Asso.* 23 Utah 291; 64 P. 870. These are leading cases in these jurisdictions. To cite all the decided cases in the same jurisdictions would unnecessrily prolong this opinion.

This rule has been criticized in a vigorous, logical and learned opinion, by the late Chief Justice Whitefield, *People's Building and Loan Asso.* vs. *McPhilamy*, supra, on the ground that it ignores the fact that the borrower was a member of the association up to the time of insolvency, and that he proceeded on that basis, bearing his proportionate part of the losses and expenses. Quoting from that opinion the words of the learned Chief Justice we have this statement; "Close analysis makes it plain that this is not just to the non-borrower, for under this method the borrowing member would get back, entire, all his stock dues, without abatement of a single cent, whereas the non-borrower would only get back such portion of his stock dues paid in as would result from the winding up of the affairs of the association—less than the whole in every case of insolvency. The true doctrine undoubtedly is that the contracts are to be abrogated for the future—that is to say, so far as they are executory—but that prior to insolvency, they shall stand. In other words, up to insolvency the payments must stand in the character they had when made; for example, stock dues as payments made by the member in his capacity as member, but after insolvency the borrower's obligation to pay stock dues, etc. shall cease because the consideration for such payments fails from that time forward. Merely because the association becomes insolvent, what he has theretofore paid as his allotted part of expenses and losses has not by some occult process changed its character and become interest or principal paid on the debt." In amplification the learned justice says; "A borrowing member of a building and loan association occupies a dual relation to the association. In his capacity as borrower he is a debtor. In his capacity as shareholder, he is a member of the corporation. What he pays as interest is paid in his character as debtor on his loan. What

he pays as stock dues is paid in his character as stockholder. The two are separate and distinct and must be so dealt with. When a building and loan association becomes insolvent there is nothing to do but wind up its affairs. The shareholder who has been a member remains a member, liable to his just proportion of losses and expenses. He suffers a hardship in this; that, instead of having his payments on his loan distributed in small instalments over many years, he is compelled by the necessity of the situation, and the nature of the building and loan association, to pay up his loan in one lump sum, with legal interest. This often involves great injustice to him, but it is, nevertheless, one of the risks which he assumed in becoming a member of this mutual association."

The second view, commonly known as the Pennsylvania rule, is that the borrowing stockholder is entitled to credit on his loan for the amount of interest and premium paid by him, but is not entitled to have the amount of the dues paid by him on account of stock applied on his loan. Under this view, credits and debits relating solely to the borrower's rights and liabilities as a stockholder, such as dividends, withdrawal value of stock, and charges for losses and expenses, are not made, but are left until the final winding up of the association and the settlement with members—borrowers as well as non-borrowers. This view is admirably and concisely stated in *Rogers* vs. *Hargo*, 92 Tenn. 35; 20 S. W. 430; where, in a brief opinion, stating a case very similar to the one at bar, the court says, "We are content to follow the decision of the Pennsylvania court. Charge defendant " (in that case a borrowing member) "with money actually received by him, treating same as due and drawing interest from time received, and credit him thereon by payments of interest and premium when made. Ascertain balance due, making calculation upon principle of partial payments, and give recovery for such balance. Let amount paid by defendant as dues on stock stand to his credit on the books of the corporation until time for final adjustment, when he and all other stockholders, borrowers and non-borrowers, will be paid pro rata from the fund for ultimate distribution. Thus the loss will be apportioned equally."

This second view is adopted by a larger number of courts than those adopting the first view, and in our opinion is based upon better reasoning. Some of the leading cases in jurisdictions adopting this second view are *Cooper* vs. *Newton*, 160 Fed. 190; *Hale* vs. *Phillips*,

68 Ark. 382; 59 S. W. 35; *Groover* vs. *Pacific Coast Sav. Soc.,* 164 Cal. 67; 127 Pac. 495; Ann. Cas. 1914 B 1261, with very extended note in which it is declared that the weight of authority favors the Pennsylvania rule; *Curtis* vs. *Granite-State Provident Asso.* 69 Conn., 6; 36 Atl. 1023; 61 Am. St. Rep. 17, with note, an oft cited case; *Fell* vs. *Securities Co.,* 95 At., 346, a case decided by the Chancery Court of Delaware in 1915; *Number Four, etc., Union* vs. *Smith,* 155 Ind. 679; 58 N. E. 70; *Tootle* vs. *Singer,* 118 Iowa 533; 88 N. W. 446; *Eisenhart* vs. *Scammon Inv. Asso.* 71 Kan. 855; 80 Pac. 960; *Kentucky Bldg. Asso.* vs. *Daugherty,* 27 Ky. L. 759; 86 S. W. 705; *Home Savings Soc.* vs. *Mason,* 127 Mich. 676; 87 N. W. 74; *Knutson* vs. *Northwestern Loan Asso.* 67 Minn, 201; 69 N. W. 889; 64 Am. St. Rep. 410; *People's Bldg. Asso.* vs. *McPhilamy,* supra; *Woerheide* vs. *Johnston,* 81 Mo. A. 193; *Anselme* vs. *American Sav. Asso.* 63 Neb. 525; 88 N. W. 665; *Bank Com.* vs. *Granite State Prov. Asso.* 68 N. H. 554; 44 Atl. 605; *New Jersey Bldg. Co.* vs. *McNulty,* (Ch.) 71 Atl. 493; *Monier* vs. *Clark,* 12 N. M. 118; 75 Pac. 35; *Hale* vs. *Cairns,* 8 N. D. 145; 77 N. W. 1010; 73 Am. St. Rep. 746; *Leechburg Bldg. Asso.,* vs. *Kinter,* 233 Pa., 354; 82 Atl. 498; *Johnston* vs. *Grosvenor,* 105 Tenn. 353; 59 S. W. 1028; *Price* vs. *Kendall,* 14 Tex. Civ. Ap. 26; 36 S. W. 810; *Young* vs. *Martinsburg Impr. Loan Asso.* 48 W. Va. 512; 38 S. E. 670; *Leahy* vs. *National Bldg. Asso.,* 100 Wis. 555; 76 N. W. 625; 69 Am. St. Rep. 945.

A third view, adopted in only a few jurisdictions, differs from the second in that, instead of crediting the borrowing shareholder with the whole premium, it credits him with only the part estimated as unearned.

It is well settled that the equitable right or set-off is not dependent upon the express provisions of statute, but is derived from the rules of the civil law, and founded upon principles of natural equity and justice, *Crummett* vs. *Littlefield,* 98 Me. 317, but it is equally well settled that the general rule in equity, as well as at law, is that demands to be set off must be mutual, and that debts accruing in different rights cannot be set off against each other. *Rodick* vs. *Pineo* 120 Me. 160; *Merrill* vs. *Cape Ann Granite Co.* 161 Mass., 212. In view of the dual relation of membership and debtor, between the association and the borrowing stockholder, as above pointed out, the equitable doctrine of set-off, as claimed by the borrowing stock holders, is not applicable in the case at bar.

The rapidly increasing amount of litigation arising from loan and building associations in the various states of this Union, to say nothing of cases in the English courts, with all the varying details occurring in the multitude of cases, makes it impossible to entirely harmonize all conflicting views held by so many courts, or to make a single, simple, hard and fast working rule which may obtain in every case. After careful examination of many leading cases, and comparison of the logic by which results have been reached, for the purposes of the case at bar, at least, we adopt the rule enunciated by Mr. Justice Caldwell, in *Rogers* vs. *Hargo,* supra, as answer to the receiver's request for instructions.

So ordered.

> *Decree below to be drawn by the attorney for the receiver in accordance with this opinion.*